# GIBBS & LABUZAN v. FROST & DICKINSON.

1. A bond signed in blank may be afterwards filled up in a material part, by the express authority of those who are to be bound by it, and will be as valid as if filled up before it was executed. Such authority may be by parol. An authority to fill up and perfect the bond is an authority to redeliver it also.

2. When two or more persons have a common object in view, the declarations of one in the presence and hearing of all, in furtherance of the common purpose, and uncontradicted by them, must be considered as the declaration of all. Therefore, when L., against whom four judgments had been obtained, and execution issued thereon, went to the clerk's office with two other persons as his

Gibbs & Labuzan v. Frost & Dickinson.

intended sureties to obtain writs of error to the Supreme Court, and to execute bonds to supersede the executions, which the Clerk commenced preparing by proceeding to fill up the blanks kept in the office for that purpose, when L. interposed, and in the presence and hearing of his sureties, stated that he had not time to wait until the bonds were filled up, and requested that they might be executed in blank, by him and his sureties, which was accordingly done, and a statement handed to L. that the executions were superseded—Held, that this was an express authority to the Clerk to fill up the blanks in the bond, both on the part of the principal and the sureties.

3. An authority to perfect a bond by filling it up, given by parol, may be revoked in the same manner, and if revoked before the bond is perfected, the authority to perfect it, is at an end.

4. A blank writ of error bond will not operate as a supersedeas to the execution.

5. When it is necessary for a party to a bond, which, by statute, has the force and effect of a judgment, to resort to a Court of Chancery for relief against the bond, on the ground that it is not binding on him, the question will be considered in Chancery, as if it had arisen at law, upon the appropriate pleas. In such a case, Chancery is the appropriate forum to obtain relief.

6. A denial of the facts of the bill, by a party who is not charged with knowledge of them, and who in fact has not knowledge of them, will not cast on the complainant the necessity of establishing their truth by two witnesses.

Error to the Chancery Court at Eutaw.

The bill which was exhibited by the plaintiffs in error, charges that the defendants in error obtained a judgment against one John Lunsford, upon which he was desirous to prosecute a writ of error to the Supreme Court, and obtain a supersedeas thereon, and applied to the plaintiffs in error to become his sureties to the writ of error bond. That pursuant thereto they with the said Lunsford signed the printed skeleton of a writ of error bond, in which the *penalty, the parties, the judgment to be superseded, and its amount,* were left blank. That at the time of signing the instrument, nothing was said about its being imperfect, and no authority was given to the Clerk to add to, or in any manner to alter the same. That on the next day, ascertaining that all the property of Lunsford had been levied on by other executions, and that he could not secure them against liability, as he had fraudulently promised to do, and that the bond was yet incomplete, one of the plaintiffs in error, for himself and the other, directed the Clerk not to fill up and complete the bond. Yet the Clerk, after the lapse of some months, proceeded to fill up the bond, and did fill it up. That when the Clerk was directed not to fill up the bond, he

wrote to the sheriff to return the supersedeas which had been issued to the office, but the sheriff refused, and returned the execution stayed by writ of error.

The said cause being carried to the Supreme Court by Lumsford, was there affirmed against him, and the plaintiffs in error as his sureties, and execution has now issued against them on the affirmed judgment. They pray an injunction, which was granted.

The defendants in error, who are non-residents, answer the bill, and deny all knowledge of the allegations of the bill concerning the writ of error, except what they have derived from the information of their counsel; but aver that the plaintiffs in error, or one of the obligors in the bond, in the hearing of all, and with their consent, did authorize the Clerk to fill up the bond, in the manner and to the effect that the same was filled up, and that the Clerk, in afterwards filling it up, acted pursuant to the license and authority thus given him by the plaintiffs in error, but admit that the Clerk received the instrument in blank, and thereupon superseded the execution, which was placed in the sheriff's hands, who thereupon sold the property levied on by virtue of the execution so superseded, and applied the proceeds in discharge of executions of inferior grade. They demurred also to the bill.

Price Williams, the Clerk of Sumter County Court, being examined as a witness, stated that the bond as executed by the parties was in the form following:

Frost & Dickinson,
vs.                    Errror bond—$479  18.
John Lunsford.

### The State of Alnbama—Sumter County:

Know all men by these presents—that we, ———— ————, are held and firmly bound unto ————, his heirs, executors or administrators, in the sum of ———— dollars, for the payment of which we jointly and severally bind ourselves, our heirs, executors or administrators, firmly by these presents, sealed with our seals, and dated this 8th July, 1840.

The condition of the above obligation is such, that whereas, the above bound ————, this day applied for and obtained a

writ of error, returnable to the January term, 1841, of the Supreme Court of Alabama, to supersede and revise a judgment recovered by the said ——, plaintiff, against ——, defendant, at the —— term, 184–, of the County Court of said county of Sumter, for the sum of ——. Now if the said ——shall prosecute to effect his said writ of error, in the Supreme Court, and shall pay and satisfy such judgment as the Supreme Court shall render in the premises, then this obligation to be null and void, otherwise to be and remain in full force and virtue.

JOHN LUNSFORD, (seal.)
BART. LABUZAN, (seal.)
CH. R. GIBBBS,   (seal.)

Signed, sealed and acknowledged before me,

PRICE WILLIAMS, Clerk.

" That the reason why the bond was taken partly filled up, and partly in blank, as shown in the exhibit, was at the special instance and request of Lunsford, made in the presence and hearing of Gibbs and Labuzan, who interposed no objection, Lunsford saying at the time that he was compelled to return to Gainesville on the evening of the execution of the bond, (it being then late in the afternoon,) to stop the sheriff from selling his property—that he considered the request of Lunsford express authority by Lunsford, Gibbs and Labuzan (the latter making no objection,) to fill up the blank. That they came to his office for the purpose of signining this and four other bonds for writs of error to the Supreme Court—that when he commenced filling up. the bonds, Lunsford, in the presence of the others said he had not time to wait for him to fill up the bonds, as he had to ride eighteen miles to Gainesville that evening, and that the bond in this and four other cases, was then prepared, executed and delivered, as shown in the exhibit."

He further stated on cross examination, " that some few days after the execution of the bonds, and before the blanks were filled, that Labuzan came to him at his office, and in his own behalf, and in behalf of Gibbs, requested that the blanks in said bonds should not be filled up, for the reason that Lunsford had failed to give him a deed of trust to secure them, as

he' had promised. That he refused, considering the bonds as good as though they had been filled up at the time they were signed." And further, "that Labuzan requested him, as Clerk of the Court, to write to the sheriff to disregard the statement sent to him in this and four other cases, which he refused to do, regarding it, under the circumstances, as good as a regular writ of supersedeas, but informed Labuzan he would write to the sheriff for him, and did so."

Much other testimony was taken which it is not necessary to notice.

The Chancellor, at the hearing, refused to sustain the demurrer to the bill for want of equity, but sustained it because the Clerk was not a party, and upon the bill, answer and proof dismissed the bill with costs, *pro forma*, that the cause might be heard in the Supreme Court.

From this decree this writ is prosecuted.

THORNTON, for plaintiffs in error, contended, that the proof of the Clerk showed that no express authority was given to fill up the blanks in the bond, but that it was implied from the silence of the parties when they executed the blank bonds. That as the bond was a nullity until it was filled up, that even an express authority to perfect it, was not sufficient without a redelivery. He cited 5 Munroe, 31; 2 Brock. 72; 2 Lomax, 21; 1 Yerger, 69; 6 Gill and Johnson, 254.

He insisted that the case relied on from 5th Mass. 540, was the case of an immaterial alteration, and that in such cases consent may be implied.

That before the authority, express or implied, was exercised, it was revoked, and that the bond was afterwards filled up without any authority whatever.

BLISS and METCALF, contra, contended that the Clerk should have been made a party, and that the demurrer to the bill was properly sustained for this cause. [1 Story Pl. 74, 137; 4 Peters' Rep. 190; 2 Stewart's Rep. 233; 1 Ala. Rep. N. S. 708; 2 id 209.]

That there was a full and adequate remedy at law. [2 Chitty's Practice, 354; 10 Mass. 101; 5 Rand. 639; 2 Leigh, 361; 6 id. 547; 5 B. and A. 187; 1 Johns. 529; 4 id. 191; 17 id.

474; 2 Wash. 54, 9 Porter, 679; 1 Ala. N. S. 98; 7 Porter, 549.]

That if equity has jurisdiction its aid should have been invoked before judgment. [7 Porter, 549.]

That the bond having been signed with the intent that it should be filled up, gave the Clerk an implied authority to fill it up. [5 Mass. 538; 6 id. 519; 4 McCord, 239; 2 Dana, 142; 17 S. and Rawle, 438.]

That the evidence showed that express authority was given, which was clearly sufficient. [2 Levinz, 35; 1 Anstruther, 228; 4 Com. Dig. 294, F.; 5 Mass. 538; 6 id. 519; 14 S. and R. 405; 17 id. 438; 4 Johns. 54; 2 Brock. 64; Story on Agency, 52; Story on Partnership, 176; 11 Pick. 400; 19 Johns. 513; Greenleaf on Ev. 602; 1 Green. Rep. 334; 6 Cowen, 59; 8 id. 118; 9 Cranch, 28; 1 Stewart, 517; 1 Ala. N. S. 18, 429; 2 Poth. on Ob. 138; Hurlston on bonds, 121.]

That the attempt to revoke came too late, as the executions were superseded. [Story on Agency, 487.]

Lastly, that the equity of the defendants is superior to that of the plaintiffs. [2 J. J. Marshall, 400; 1 Story's Com. on Eq. 75, 76.]

ORMOND, J.—Several preliminary questions are presented, which it will be proper to consider before entering on the merits of the case.

First—It is supposed by the counsel for the defendants in error, that as this is a proceeding in Chancery, the liability of the plaintiffs in error will depend on different principles, from those which would govern if the question had been made at law. This view cannot be supported. The statute of this State has given to bonds, executed to supersede a judgment on writ of error, and to many others of a kindred nature, upon forfeiture, the effect of a judgment. This forfeiture is declared *ex parte*, by the Clerk or sheriff, and execution issues thereon immediately. If, by being compelled to resort to a Court of Chancery to vacate a bond, by which a party is not bound, but to which the statute has given, *prima facie*, the force and effect of a judgment, he loses any right secured to him by the common law, the statute would be unconstitutional. This is the view which has always been relied on in this State, to sup-

port the statutes giving to these bonds the force of judgments, without a jury trial; as was held by this Court at the last term, in the case of Perkins v. Mayfield and wife. The question must, therefore, be considered here, as if it had arisen at law, upon the appropriate pleas.

Second—It is also maintained by the defendants' counsel, that as the material allegations of the bill are denied, they must be established by the proof of two witnesses, or by one with corroborating circumstances. The rule is as stated, but does not apply where the defendant has no knowledge, and is not charged with having any knowledge, of the facts alledged; as where the bill is filed against an executor, upon allegations of facts not within his knowledge. In such a case, if he should venture to deny the allegations of the bill, the only effect of such denial, would be, to put the complainant on proof of the fact.

In this case the facts are not charged to be within the knowledge of the defendants, nor is it stated that they were privy to the acts of the Clerk. In their answer they admit they know nothing of the facts but from the information of their counsel. The answer was doubtless not intended as a denial of the facts stated in the bill, but rather as a denial of the conclusions of law adduced from the admitted facts. But be the intention what it might, it cannot, under the circumstances, bring the case within the rule which the counsel have invoked.

Third—The principal question in the cause is, whether the bond executed by the plaintiff in error, in blank, is operative as their deed?

It is admitted that the skeleton, or mere office form, which was executed by them, is not obligatory as a writ of error bond, as many of the most essential parts of the bond were omitted at that time to be inserted; but it is contended that authority was given to the Clerk, by the parties to it, at the time of its execution to fill it up and perfect it. That this authority may be implied from the circumstances of the case, the object and purpose of the parties, and their consent at the time of its execution, that the instrument should subserve the purpose for which it was designed. That if wrong in this, the evidence shows that express authority was given to the Clerk to perfect the bond.

The counsel for the plaintiffs in error denies that express authority was given to the Clerk by the plaintiffs in error, to perfect the bond, but that such authority, if any exists must be implied; and that even if express authority was given to fill up the blanks, as the addition was a material part of the instrument, without which it could not operate as a bond, that it would avail nothing without a redelivery, which is not pretended to have taken place.

The only witness who has any knowledge of the facts relating to the execution of the bond, Price Williams, the Clerk, testifies, that several judgments had been obtained against one Lunsford, in his Court, among which was the one in favor of defendants in error. That Lunsford and the plaintiffs in error, as his intended sureties, came to his office, for the purpose of suing out writs of error to the Supreme Court, in all the cases, and executing bonds to supersede the executions which had issued on the judgments—that he commenced filling up the blank bonds, or printed forms kept in the office, when Lunsford interposed, statinff that it was then late in the afternoon, and that he had to ride eighteen miles to Gainesville that night, to stop the sheriff from selling his property, and had not time to wait till the bonds could be filled up; and at his special instance and request, it was executed in blank, by him and by the plaintiffs in error, as his sureties, who were present at the time and interposed no objection, the whole matter passing in their presence and hearing. That in pursuance of the authority thus given, at a subsequent time time he filled up the blanks in the bond.

We think it impossible to doubt that this was not an express authority on the part of Lunsford to the Clerk, to perfect the bond by filling the blanks, and the only question on this part of the case is, whether it was also an express authority conferred by his sureties. In our opinion it was. When two or more persons have a common object in view, the declarations of one in the presence and hearing of all, in furtherance of the common purpose, and uncontradicted by them, must be considered as the declarations of all.

It could subserve no rational purpose in such a case to require each of the contracting parties to repeat over what one had just said on behalf of all, to which there was no dissent,

but to which they all assented, by carrying the proposed de-
sign into effect, so far as their co-operation was necessary. Nor
in the ordinary concerns and business of life would such a
senseless repetition ever be resorted to, or required. The rules
of evidence are practical, and founded upon the usual and cus-
tomary conduct of men in the ordinary pursuits and business
of life. Judged by these rules, we are satisfied that the par-
ties intended at the time to be understood by the Clerk, as
speaking through Lunsford, their principal, and when the pro-
position was assented to by the Clerk, they showed their un-
derstanding of it, by carrying it into effect on their part.

Considering then, as we do, that there was an express au-
thority delegated to the Clerk to perfect the bonds by filling
them, we are next to inquire whether a bond so filled up, is
binding on the obligors as their deed, without any further act
on their part.

Without entering on the inquiry, whether an authority to
alter a bond in a material part, may not be implied from cir-
cumstances, we are satisfied that the authorities cited by the
counsel for the defendant in error, establish beyond all doubt,
that a bond may be altered in a material part by the authority
of the obligor expressly given for that purpose, and that such
authority may be by parol. The question is most elaborately
considered by C. J. Marshall, in the case of The United States
v. Nelson and Myers, [2 Brockenbrough, 64,] in which the
leading English and American cases are considered, and he at-
tains the conclusion that a bond may be altered by the express
authority of the parties to be bound thereby, but that such con-
sent cannot be implied. See also, Wiley v. Moore, 17 Ser. &
Rawle, 438; Wooley v. Constant, 4 Johns. 54. Speake v. The
U. States, 9 Cranch, 28; 6 Cowen, 59; Ex parte Decker, Board-
man v. Gow & Williams, 1 Stewart, 517; to which a great ma-
ny other cases might be added.

It was, however, strenuously maintained, that after such alter-
ation of a deed, by express authority, there must be a redelive-
ry, and as no deed can take effect without delivery, such is
doubtless the law. The fact of delivery, however is usually
inferred from other circumstances. It rarely happens that
when a deed is delivered, it is formally placed in the hands of
the obligee, with the declaration that it is delivered. The

mere permission of the obligor to the taking possession of the deed by the obligee, is a delivery, and is so laid down in the books. When, therefore, an authority in conferred on one to perfect a deed by filling it up, he must of necessity have the power of consummating the act by a delivery, otherwise his authority is nugatory. Thus in one of the oldest cases on this subject, Texira v. Evans, cited and relied on in Master v. Miller, [1 Anstruther, 229,] the point appears to have been thus ruled. The case is thus stated—Evans wanted to borrow four hundred pounds, or so much of it as his credit would be able to raise ; for this purpose he executed a bond with blanks for the name and sum, and sent an agent to raise money on the bonds. *Texira* lent two hundred pounds upon it, and the agent accordingly filled up the blanks with that sum, and *Texira's* name, and delivered the bond to him. On *non est factum*, Lord Mansfield held it a good deed. We do not learn from the case that there was an express authority to deliver the deed, but that it was implied or perhaps to speak more correctly, included in the general power, as otherwise the power could not be effectuated.

It appears further from the testimony of Mr. Williams, that one of the plaintiffs in error, a day or two after the blank bond was executed, called on him, and for himself and on behalf of his co-surety, requested that his bond should not be filled up, which the Clerk declined to accede to, considering the bond in its then condition, as obligatory as when perfected by filling up; and had in consequence sent the sheriff a statement that the executions were superseded, and that he had no further power over the subject, except to complete the bond.

A parol power to do an act may be revoked by parol before it is executed; nor was it contended that the authority conferred on the Clerk by the plaintiffs in error, to perfect the bond, was in its nature irrevocable; but it was argued that as the Clerk had commenced the execution of the power, by notifying the sheriff that the execution was superseded, whereby the defendants in error were prejudiced, the power of revocation was gone. This position is doubtless correct, if the facts are as the. argument supposes. But the *supersedeas* is not the act of the Clerk, but the legal consequence of the bond. The statute declares that when bond and security are given according to

law, the writ of error shall operate as a *supersedeas*. [Aik. Dig. 255, §8.] Until the Clerk executed the power conferred on him, by filling up and perfecting the bond, it was a nullity, and could not in any manner affect the execution. The argument that the premature action of the Clerk, notifying the sheriff that the execution was *superseded,* was a commencement of the execution of the power, can only be supported on the idea that the bond in its imperfect state was operative, because the Clerk had the power to perfect it; or in other words, that the mere power to execute the bond, was, in law, the bond. Whether the bond would not have related back to the time when the blanks were executed, if the power had been exercised before it was countermanded, it is not necessary now to determine; but the power having been revoked before it was exercised, is as if it never had existed.

Much has been said in the argument about the consequences of a decision in this case, against the validity of the bond. If it be true, as supposed, that our Clerks are in the practice of superseding executions on blank bonds, it is time they were distinctly admonished that such a practice is without legal authority, and that they consult their safety and security only by keeping within the pale of the law. The consequences to which a position may lead may be, and frequently is, persuasive of its unsoundness; but when the law is plain and undoubted, we cannot hesitate to enforce it, from an apprehension of the consequences which may result from its having been disregarded.

4. It remains to consider whether the Clerk should have been made a party to the bill.

In the case of Lockhart v. McElroy, at the present term, we held that for any abuse of the process of the Court, the Courts of common law could render summary justice upon equitable principles, on motion, and to attain the object, might supersede the execution during vacation. But in a case like the present, such relief could not with propriety be granted. The Clerk is directly interested in this controversy, and complete justice cannot be done unless all parties in interest, or who are responsible, are before the Court, as otherwise they are not concluded by the litigation. This point was thus ruled in the

case of Brooks v. Harrison, [2 Ala. Rep. 209,] a case which cannot be distinguished from this.

But the bill should not have been dismissed for this cause, but permitted to stand over, that the Clerk might be made a party. The decree of the Chancellor dismissing the bill must be therefore reversed, and the cause remanded for further proceedings. But this is not considered a proper case for costs; each party will therefore pay his own costs in this Court.