## DONELSON'S ADM'RS v. POSEY, ET AL.

1. A bill is not multifarious, which makes two trustees, claiming under different deeds, parties, they being trustees of the same property, and having a common interest in defeating the claim set up by the bill.
2. A deed made by one who from excessive intoxication is deprived of the use of his reason, so that he is incapable of giving his serious, deliberate consent to the act, may be avoided, both at law and in equity, though the party claiming under the deed may have had no agency in producing the drunkenness.
3. An allowance to a trustee, of twelve and a half per cent., by the terms of the deed, will not render it void, in the absence of proof that it was unconscientious.
4. A partner has no right, or share in the partnership property, until the partnership debts are paid, and each of the partners has the right to have the firm debts paid, before any of the partners, or their personal representatives, or any individual creditor of such partner, can claim any right or title thereto. Each partner has a *specific lien* on the partnership stock, not only for the amount of his share, but for all monies advanced by him, beyond that amount, for the use of the partnership; and each partner has the right to assert his equity in behalf of creditors.
5. An insolvent firm, will not be allowed to recover a debt from one who is liable to pay, and has paid a debt for the same firm.
6. The equitable right of a party to a set off, cannot be defeated by a transfer of the debt to a trustee.
7. In the absence of any special agreement between partners, for a division of the profits, and loss, the law implies that they were equally interested.

Error from the Lauderdale Chancery Court. Before the Hon. W. W. Mason, Chancellor.

The complainants, as the representatives of John Donelson, filed their bill in the chancery court of Lauderdale, and among other things, charged that the intestate, John Donelson, and one P. F. Pearson, now also deceased, were partners in merchandizing. That their said mercantile co-partnership commenced about July, 1833, and ended about the 1st of November, 1835, and was carried on under the firm name and style of P. F. Pearson & Co.

That about the 1st November, 1835, Donelson retired from the concern, and one John D. Coffee then entered into partnership with said Pearson, the said new firm taking the goods, wares and merchandize of the old firm, and assuming the payment of all the outstanding debts and liabilities of Pearson & Donelson.   This new firm continued in business until about the 1st September 1837, when Coffee died, after which Pearson carried on the business alone, up to the 17th October, 1838—having taken the stock in trade, the bill charges he was liable to pay the debts of P. F. Pearson & Co. and Pearson & Donelson.

That at the period last named, Pearson failed, and executed a deed of trust to one Willis Pope, jr. for the benefit of one Andrew J. Hutchings, Francis Kemper, and the administrators of the estate of said John D. Coffee, viz: said Hutchings and one Robert W. Brahan.   That the said deed of trust, as by its recital, proposed to secure said Hutchings against his liability for said Pearson, in the sum of $15,000, and the said Kemper in the sum of $3008, due from said Pearson to him, and the administrators of John D. Coffee in a large amount, which is stated as unknown.

This deed to Pope conveys only the accounts and notes made in 1838, and the merchandize on hand at the time of its execution.

On the 20th October, 1838, said Pearson executed a second deed of trust to one Sidney C. Posey, as trustee, conveying the same property theretofore conveyed in the first deed, and also all the notes and accounts due to said Pearson and to Pearson & Coffee, then due, which last deed was made to secure Robert W. Brahan against certain liabilities incurred for Pearson, and also to secure said administrators of John D. Coffee, in the sum of fifteen hundred dollars, due their intestate.

The bill further charges, that Pearson came to a settlement on the 1st October, 1838, of the amount due Coffee; the amount was settled at $1,500, for which Pearson gave his note, and which was secured by the deed to Posey. That by this settlement, Pearson became the owner of all Coffee's interest in the business of Pearson & Coffee, and

that such was the understanding of Hutchings and Brahan, at the time of such settlement.

That there was no settlement between Pearson & Donelson, at the time Donelson withdrew from the firm—but a large sum was then due Donelson.   That the capital paid into the concern by him amounted to .... ...... $5,000 00
That his share of profits on merchandize was.... 4,750 00
That his profits in a partnership cotton speculation
   was,...... ...... .... .... ...... ...... .... 3,082 36
That on settlement of accounts between them, on
   the 1st March, 1839, the above was agreed on as
   correct, and adding  interest upon the sums thus
   ascertained to be due up to that time, which was
   set down at ...... ...... .... .... .... ...... 2,846 24
Making the total of Pearsons debit up to 1st March,
   1839, the sum of ...... ...... ...... ...... .10,825 60

The bill charges that accounts against said Donelson have been exhibited, made during the years 1834, '35, '36, '37, and 1838.   That complainants have no personal knowledge of the correctness of  said accounts,  but found them among the papers of the intestate, as follows :

Account for merchandize in 1834, ...... ......    $1696 86
Ac't for 1835, with P. F. Pearson & Co. $1359 60
   "        "      with Pearson & Coffee,     536 78
   "      1836,        "             "      1426 41
   "      1837,        "             "       876 78—2839 97
   " due P. F. Pearson, for 1837,            497 20
   "    "         "         " 1838,         1209 22—1706 42
Interest  being added from the time the  accounts
   fell due to 1st  March, 1339, when the settle-
   ment was made ...... ...... ......· ........ 1449 83
Leaves the total amount of the sum to be credited  ————
   to said Pearson, ...... .... .... ...... .... $9,052 68
And assuming the account as stated to be correct,
   a balance was due Donelson, on the 1st March,
   '39, of ...... ...... ...... .... .... ...... $1,772 92

That since the  dissolution of the firm of P. F. Pearson & Co. complainants aver,  that as administrators of Donelson, they have been compelled to pay, by suit, a large demand, the proper  debt of Pearson & Coffee, but  which was recov-

ered of them as Donelson's personal representatives, by reason of the failure of the firm to give the notice required by law of the dissolution of the firm of P. F. Pearson & Co. That said demand, so by them paid, was created for goods, wares and merchandize, then forming a part of the stock in trade.

That Pope and Posey, notwithstanding Pearson has died wholly insolvent, refuse to admit the judgment so obtained upon the demand last named, to be adjusted as an equitable demand, out of the effects of Pearson & Coffee. But they are claiming a large sum of complainants as the representatives of said Donelson. That said Pope, as trustee, claims to recover the accounts of Donelson, and refuses to settle by discount, by reason of the trust created by the deed aforesaid, and also another deed made to him, as he alledges in favor of one William Weakly. Complainants aver that said Pope had more effects, merchandize, and debts, independent of the demands against said Donelson, than would be sufficient to pay off and discharge the debts mentioned in the deeds of trust, and if said Pope has failed to pay off said debts, it has resulted from his own fault.

The bill further charges, that Pope and Posey, the trustees in the respective deeds, have, each of them, caused suits to be instituted against complainants in the name of Winston P. Pettus, the administrator of said P. F. Pearson, to recover the accounts, &c. aforesaid. That said Pope has also sued complainants as administrators of Donelson, in his own name, for $169 27 for goods alledged to have been purchased at a sale made by him of the goods so assigned. That inasmuch as the said Pope has sufficient debts and effects exclusive of the demands against said Donelson's estate, to pay and satisfy the demands secured by the deed to him, and all expenses, complainants aver it is unjust to permit him to recover the demands sued for. That as to the suit of Posey, complainants aver they have a right in equity to set off their demand as administrators, against the claim of Pearson's trustee. That the debts embraced in Posey's deed are individual debts, and that their equity is superior to that of the creditors whom Posey represents.

The prayer of the bill is, that an account be taken between

the complainants, as the personal representatives of Donelson, and the said trustees and *cestuis que 'trust*, and the administrator of P. F. Pearson, so far as may be necessary to afford them equitable protection; and that an injunction be awarded against the prosecution of the suits at law, by the administrator of Pearson, for the use of Posey and Pope, and also against the suit of Pope, for the goods sold as above stated.

The defendants answered this bill, denying an indebtedness to complainants' intestate, on the part of Pearson, and denying their right to the equitable sets off claimed.

Afterwards, Stokely Donelson, one of the complainants, having resigned the administration, Eliza Donelson filed, by leave of the chancellor, her amended bill, charging, among other things, that Pearson, at the time of the execution of the several deeds of trust to Posey and Pope, was incapable, from the intemperate use of ardent spirits, of making a valid conveyance, as his mind was so much impaired, that he did not know the legal effect or obligation of such contracts. Besides, the amendment avers that the deed made to Pope for Hutchings's benefit was obtained by threats and menaces of personal violence, on the part of Hutchings. The amended bill avers, that the payment to the marshal of the U. States for the northern district of Alabama, of an execution issued upon a judgment rendered in the district court of the United States, at Huntsville, on the 23d November, 1841, in favor of Montelius & Fuller, for $991 30, besides $50 cost of suit, and the fees of the marshal, which judgment was rendered for the proper debt of Pearson & Coffee, on a note given in the name of P. F. Pearson & Co. to Joshua C. Oliver, for goods which said Pearson & Coffee purchased and received, eleven months after the dissolution of the firm of P. F. Pearson & Co. That the note upon which they were rendered liable, was dated 23d September, 1836, and was assigned by Oliver, the payee, to Montelius & Fuller. Complainant further avers, that she has been as such administratrix, compelled to pay another debt of Pearson & Coffee, created for borrowed money, and reduced to judgment in the circuit court of Lauderdale county, on the 7th April, 1843, in favor of B. F. Weakley, which debt, with the damages and interest,

paid by her, amounted to $302 96 besides cost, amounting to some $85.

Complainant avers several other judgments rendered against her, upon demands, as she alledges, after the dissolution of the firm of Pearson & Donelson, and properly chargeable to Pearson & Coffee—one to B. & N. Harris, which she has paid, amounting to $2,021 40. Also, a judgment in favor of Ann Key, for $1,719 14, which she has not yet, but will shortly have to pay.

The bill insists, that complainant's equity, which is that of the creditor, whose debts complainant has paid, is a superior equity for satisfaction out of the effects of the partnership, to the equity of Pearson's assignees. The amendment prays perpetuation of the injunction granted on the original bill, &c.

The defendants answer this amendment, and admit the intemperate habits of Pearson, but aver he was sober when the trust deeds were made. Also, deny the allegations that the demands paid by complainant, were the proper debts of Pearson & Coffee, but say the firm of P. F. Pearson & Co. continued up to 1837, for the purpose of settling the old business, borrowing money, &c.

The defendants also demur to the bill—1. Because there is no equity shown upon its face. 2. Because, they alledge, it is multifarious. The chancellor overruled the demurrer.

Various depositions were taken on both sides, which, so far as material, will be noticed in the opinion. The chancellor, on the final trial, dismissed the complainant's bill, and adjudged the cost to be levied of the effects of Donelson. This decree is assigned for error.

Hopkins, with whom was Nooe, for the plaintiff in error, made the following points:

1. The deeds of assignment executed by Pearson, when from intoxication he was incapable of making a valid contract are void. Swift v. Fitzhugh, 9 Porter, 63; Mordecai v. Tankersly, 1 Ala. 102; Prentice v. Achorn, 2 Paige, 30; Cook v. Clayworth, 18 Vesey, 12.

2. Whatever sum Pearson owed Donelson for the capital and profits of the latter, in the firm—or for the share of Don-

elson in the speculation in cotton, was in the nature of an equitable debt, due to Donelson at the dissolution of the firm, for which he had no remedy but in a court of equity. 1 Ala. Rep. 521; 7 Id. 217. This equity of Donelson is older than that of Pope, which arises from the transfer to him of Donelson's debt to Pearson, created subsequently, and must be preferred to it, whether Pearson was solvent or not, when he transferred it to Pope as trustee, and as collateral security. 6 Dana's Rep. 306; 10 Peters's Rep. 179, 210; 8 Ala. Rep. 224.

3. As Donelson was compelled to pay three notes of the firm of Pearson & Coffee, from his failure to give notice of the dissolution of the firm of Pearson & Donelson, as a surety for the money thus paid, this claim did not accrue until he was compelled to pay, since the commencement of the suit at law, by Posey against him, and being a creditor of the firm of Pearson & Coffee, is equitably entitled to a preference over their individual creditors. Lucas v. Atwood, 2 Stew. 378; Winston v. Ewing, 1 Ala. 129; Story on Part. 513-19-20, 458.

4. The conveyance in trust, being for the benefit of the individual creditors of Pearson, Donelson, as a creditor of the firm, is entitled to a preference out of the assets of the firm, and of this right a court of equity only has cognizance. To show that Brahan, for whose benefit the assignment was made, was an individual creditor of Pearson, and that Coffee was discharged, they cited Tom v. Goodrich, 2 Johns. Rep. 213; Story on Part. 525.

5. A court of equity has jurisdiction in this case, because none of the claims of Donelson could be set off in the action at law. 8 Ala. 222; 3 Leigh, 698; 5 Id. 34; 2 Paige, 582; 6 Dana, 32, 305. So, upon the authority of these cases, the note made to Oliver before the dissolution of the firm of Pearson & Donelson, is an equitable set-off, as he was compelled to pay it, after the suit at common law commenced against him by Pearson, especially as Pearson was insolvent, when he made the conveyances in trust, which is the source of a new equity, ample to sustain the bill. See the authorities cited under this head. This fund under the control of the trustee, cannot be reached without making Posey a par-

ty, as well as Pope, as the former has an interest in the funds in the hands of the latter—the bill is not therefore multifarious for this cause.    2 Howard U. S. 642; 2 Ala. 573.

6. It was the duty of Pearson, the acting partner, to keep correct accounts; his omission to do so, rendered the proof offered competent.    Story on Part. 278.

7. The improper commissions secured to the trustee in the deed, made it fraudulent on its face.    1 Fonb. Eq. 117, note 13; Ib. 118, note 2; Chesterfield v. Janssen, 2 Vesey, 155.

E. W. PECK and L. P. WALKER, contra.

The object of the bill is two fold—to set aside the deeds of assignment from the drunkenness of the grantor, Pearson, and to establish certain alledged claims as equitable off-sets.

1. The deeds cannot be set aside for the cause alledged, because drunkenness, like lunacy, or infancy, is a personal privilege, which is only available to the party himself, or those in privity with him.    13 Mass. 375; 2 Cowen, 552; 20 Johns. 478; 2 Hill on Real Property, 421, note a; 1 Eq. Dig. 401-2-3.    Secondly, it should have been shown, that the drunkenness was excessive, and that the grantor was utterly deprived of his reason and understanding—1 Story's Eq. § 231; 4 Eq. Dig. 150, § 1; 1 Kinne's L. C. 333—and that the drunkenness was procured, and superinduced, by the party claiming under the deed—1 Vesey, 19; Fonb. Eq. 75; 1 Bibb, 406; 1 Powell on Cont. 18; 1 Madd. Chan. 239; 10 Yerger's R. 121; 18 Vesey, 12; 1 Story's Eq. 242-4—and the proof is wholly wanting in all these particulars.

2. The claims attempted to be set up as equitable sets off, are not mutual, or due to, and from the same persons, in the same right, which is essential to a set off, either at law, or in equity.    1 Porter, 232; 9 Id. 452; 5 Ala. 110; 3 Johns. C. 573; Id. 351; 4 Id. 11; 1 Cond. R. S. U. S. 417; 7 Porter, 549; Burge on Suretyship, 462; 10 Vesey, 105; Ex parte Toogood, 11 Vesey, 517.    Equity does not allow a set-off, of a joint debt, against a separate one, or the converse, except under peculiar circumstances, which do not exist in this case.    2 Story's Eq. § 1437, note 3; 5 Cranch, 34; Burge on Suretyship, 463; 10 Vesey, 105.

3. There is no sufficient proof, that the note of Oliver,

was given by Pearson & Coffee for goods, purchased by them, but conceding such to be the fact, as it was not paid by Donelson, at the time the deeds of assignment were executed by Pearson, there was no subsisting liability to create an equity in favor of Donelson, and against the assignee. 7 Porter, 110; 8 Ala. 223. But conceding that all the notes paid by Donelson were the debts of Pearson & Coffee, yet that would not invest him with an equity, equal to that of the creditors represented by Posey & Pope, as the liability of Donelson was the result of his own laches, in failing to give notice of the dissolution of the partnership, and the omission of the administrator to defend at law.

4. As to the case of the Rail Road Co. v. Rhodes, 8 Ala. Rep. 206, it is respectfully submitted, that the law of the case is correctly expounded by Ormond, J. and in confirmation of his opinion, beg to refer to the following cases, showing that the determination of the majority of the court, was founded upon the liberal construction put upon the term "mutual credit" in the bankrupt law of England. Burge on Suretyship, 455-7, 462-3-4-7; Smith v. Hodson, 4 Term, 211; Atkinson v. Elliott, 7 Id. 378; Hankey v. Smith, 3 Id. 508; Rose v. Hart, 8 Taunton, 499; 8 Id. 156; Glennie v. Edwards, 4 Id. 775; *Ex parte* Wagstaffe, 13 Vesey, 65; Lanesborough v. Jones, 1 P. Wms. 325; Davies v. Wilkinson, 4 Bing. 578; Rose v. Sims, 1 B. & Ald. 521; Easum v. Cato, 5 B. & Ald. 861. But they contended, that the case was plainly distinguishable from this, as it is not shown that Coffee knew that the goods were purchased with a note of P. F. Pearson & Co., and unless he did know the fact, there was not even an implied assumpsit that he would refund, and Donelson could not by paying the debt without his consent, make himself his creditor.

5. They contended that where third persons, as in the present case, have acquired rights by an assignment, no equities attach except those existing at the time of the assignment, and no liabilities will be allowed as sets off against such persons, except those subsisting in the shape of actual debts, as contra-distinguished from contingent liabilities, against the assignor, at the date of the assignment. 2 Story's Eq. 656-8, 664, § 1436, note 1; 5 Paige, 592; 2 Sumner,

409; 3 Johns. C. 358; 1 Edwards Ch. 402; 2 Id. 73; 5 Mason, 202; Holcombe's Introduction, 284; Gay v. Gay, 10 Paige, 369.

6. Lastly, they contended that upon the proof, the case was with them.

CHILTON, J.—It is insisted by the counsel for the defendants in error, that the will is multifarious, as containing an improper joinder of distinct matters. Also that its objects are inconsistent and repugnant, because it seeks to set aside the deeds of trust made by Pearson to Messrs. Pope & Posey for fraud and incapacity on the part of Pearson, the grantor, and at the same time, prays relief which can only be granted by admitting the entire validity of both deeds. This inquiry becomes proper in this view of the case,—if the bill for *any* cause should have been dismissed, this court will not reverse the decree of the chancellor, because he may have failed to dismiss it for the true reason.

The *gravamen* of the bill is, that Pettus, the administrator of P. F. Pearson, is endeavoring to enforce collection of certain alledged demands due by account from the complainant's intestate, to P. F. Pearson and Pearson & Coffee in their lifetime, and against which complainant cannot defend at law; first, because of the nature of the subject matter of their defence, being, as is alledged, equitable sets off; second, because of the peculiar relation in which the parties stand to each other, representing partners in a late mercantile firm; third, because an account which can be alone appropriately had in equity, is required to be had, to define the rights of the respective parties; and fourth, that the demands are sued to the use of certain persons claiming them by virtue of trust deeds, executed by Pearson, which deeds, as against complainants, are charged to be inoperative, because they were obtained from him while intoxicated. This is one aspect of the bill, upon which complainant predicates her claim for relief. Another is, that complainant has been compelled to pay firm debts due by Pearson & Coffee, which debts should be a charge in equity upon the firm effects, and be preferred to the claims of the trustees; and, allowing the trust deeds

96

to be valid, there will still remain a surplus to be appropriated to the payment of complainant's demands, after satisfying the demands of the respective *cestuis que trust*. The objection for multifariousness, so common in modern practice, is not favored in courts of equity. These courts are desirous of preventing multiplicity of suits, by settling at one suit, what at law might require many actions to adjust. Their forms of proceeding are flexible. They bring all parties interested in the subject matter before them, that their rights may be protected, and the whole matter in controversy adjusted by one decree, adapted to the particular exigencies of the case. This desire, however, to avoid litigation, and prevent multiplicity of suits, is never carried so far as to burthen defendants with cost accruing in respect to uniting in one bill several matters wholly distinct, against one defendant, or several distinct matters against several defendants. Besides the accumulation of costs, such a practice would introduce great delay and confusion, and greatly impede the administration of justice. 1 Story's Eq. Pl. 225. Is the case at bar liable to this objection? "A bill," says Judge Story, " is not to be treated as multifarious because it joins two good causes of complaint, growing out of the same transaction, where all the defendants are interested in the same claim of right, and where the relief asked for in relation to each is of the same general character." So also, where the defendants have *one* common interest touching the matter of the bill, although they claim under distinct titles, and have independent interests. Ib. 233. It is the practice for several judgment creditors to unite in one bill against their common debtor and his grantees, to remove impediments created by fraudulent sales made by the debtor to such grantees, although they take by separate conveyances, and no joint fraud in any one transaction is charged against them all. Brinkerhoff v. Brown, 6 Johns. Chan. Rep. 139; Fellows v. Fellows, 4 Cow. 682; Brown & Dimmock, et al. v. Bates, 10 Ala. R. 433. In Delafield v. Anderson, 7 Smedes & Mar. Rep. 630, a bill was filed to set aside several sales made under the same execution to different defendants, upon the ground of inadequacy of price, and a want of such interest as could be sold—held, upon demurrer, the bill was not multifarious. See also

Wright v. Shelton, et al. 1 S. & M. Ch. Rep. 399; Martin, Pleasants & Co. v. Glascock, et al. Ib. 17. In Varick v. Smith, 5 Paige's Rep. 160, it is said by Walworth, chancellor, a bill is not multifarious because two good causes of complaint arising out of the same transaction, are joined in one suit, in which all the defendants are interested in the same claim of right. This court has made several decisions upon the subject of multifariousness in a bill. In the case of Kennedy's Heirs and Executors v. Kennedy's Heirs, 2 Ala. Rep. 571, it is said, " a case against one defendant may be so entire as to be incapable of being prosecuted in several suits; and some other defendant may be a necessary party to some portion only of the case stated." In the latter case, multifariousness would not be an available objection. See also 3 Milne & Craig's Rep. 85. It is further added, the courts find it impracticable to lay down any inflexible rule upon this subject, but discourage the objection when it would defeat, rather than advance the ends of justice. See also Chapman v. Chunn, 5 Ala. Rep. 397.

In Mecham v. Williams, et al. 9 Ala. Rep. 842, it is held, that a bill is multifarious when there is no act charged in which all the defendants have participated, in committing a wrong upon the equitable estate of the complainants, and where it is shown they do not derive a title, or claim through a common source, affected with the complainants' equities. See also Coleman v. Broughton, 9 Ala. 351; Mariott & Hardesty v. Givens, 8 Ib. 694.

Applying the principles above ascertained to the case before us, we think the bill cannot be regarded as multifarious. The interest of the two trustees, Pope and Posey, is too closely united and blended to authorize the conclusion, that they have not a joint concern in defeating complainant's equities. Indeed, in one aspect of the bill, they are indispensable parties. The complainant alledges that if both their deeds be valid, there are effects enough conveyed to pay up the debts secured by them without collecting the accounts sued upon, out of her estate, and inasmuch as the deed to Posey embraces all the property conveyed by Pearson to Pope, and as both deeds provide for the security of the same demand to Coffee's administrators, it is evident, though

claiming under different deeds, they are trustees of the same property, and have a common interest in defeating the claims set up by the bill.

But if the property conveyed should not be sufficient to pay the debts, and both the trust deeds should stand, still, if complainant's equities are superior to those created by the deeds, the joint interest of the respective trustees will be affected. Each trustee is interested in seeing that the fund in the hands of the other is not diminished. Posey, because he takes by his deed what is not required to pay the debts in the deed to Pope, and the creditors in Pope's deed, if the funds fall short of paying them, may turn the administrators of Coffee, who have two securities, over to the assets in the hands of Posey, if they be sufficient, and thus increase their dividend.

But aside from this view, the bill alledging the right of equitable set off against the administrator of Pearson, to the extent of the demands claimed by him, it would be oppressive, and subserve no good end, to drive the complainant to as many suits as there are persons to whom the administrator intends making partition of the funds. Complainant's equity is against the administrator, and the opposing equities of the trustees, are in the nature of incumbrances set up to defeat the relief sought. The whole matter may well be adjusted in one suit. Neither is the bill repugnant as contended in the argument, but we must regard it as framed with a double aspect, so that if the courts should decide against complainant with respect to the trust deeds, she may be relieved allowing them to be valid. Strange, et al. v. Watson, 11 Ala. Rep. 325.

2. Coming then to the main question involved in this case, we will consider whether, from the bill, answers and proof, the complainant shows she is entitled to any relief, and if so, to what extent.

It is conceded that complainant's intestate made an account with the firm of P. F. Pearson & Co., of which he was then a member, in the years 1834-5, to the amount of $3,056 46. That he also made an account with the firm of Pearson & Coffee, during the years '35-6-7, to the amount of $2,839 97. That after the dissolution of the firm of

Pearson & Coffee, he made an account with Pearson individually, in the years '37 and 8, to the amount of $1,706 42, of which account, $1,209 22 was created in 1838.

The deed by Pearson to Pope, dated 17th October, 1838, conveys to the latter " all his book accounts, and books, notes, and demands, then in the hands of Pearson, and which were made since the first of January, 1838 ; also, his stock of goods, wares and merchandize then on hand, together with every thing appertaining thereto," &c.    So that it is contended, this deed vested in Pope the equitable right to $1,209 22, of the account made in 1838, by Donelson with Pearson.

The deed to the defendant, Posey, bears date the 20th October, '38, and without noticing the previous conveyance to Pope, Pearson transfers to Posey all his accounts and goods on hand, and various lots of land, &c., and other personal property.    Under this deed Posey claims to hold for the purposes of his trust, the accounts made by Donelson prior to the year 1838, and actions are commenced in the name of Pettus, the administrator of Pearson, to recover upon said accounts, for the use of the respective trustees.

The demands which complainant sets up, and which she insists are of an equitable character, and should be preferred to the equity of the trustees are—First, demands against the firm of P. F. Pearson & Co., viz:    $1,000, balance of $5,-000 capital advanced—$4,750, share of profits on merchandize—$3,082 33, profits on partnership cotton speculation, realized by the firm ; making the total sum due from Pearson to the complainant's intestate, at the dissolution of the firm, (1st November, 1835,) $8,832 36.

To this sum complainant insists should be added the amount collected from her estate by Messrs. Montelius & Fuller, on a note assigned them by Joshua C. Oliver, dated 23d September, 1836, and which, with the interest and cost paid, amounted to $1,198 45.    Also, a debt paid Weakly, and a debt paid Benjamin Harris, both which debts it is alledged are the debts of Pearson & Coffee, and for which notes were given in the name of P. F. Pearson & Co.

Before considering the proof as applicable to these several claims, it is proper to remark, that the defendants have no personal knowledge of the state of accounts between the

parties, and their answers averring their want of information and casting upon the complainant the burthen of proof, do not require the same amount of testimony to sustain the allegations of the bill. In such case, this court has held one witness is sufficient to establish the truth of such charges. See Gibbs & Labuzan v. Frost & Dickerson, 4 Ala. Rep. 720.

Respecting the demands in favor of Donelson, we think the most of them very satisfactorily proven. All the members who composed the respective firms of P. F. Pearson & Co., and Pearson & Coffee have died. We are then compelled to resort to the best evidence which can be had under the circumstances, and it is natural to conclude that the books of the firm, and the persons engaged as the agents and clerks of the partners, would furnish the most reliable source for satisfactory evidence of their transactions. The witnesses Neander H. Rice, and W. Bassett, were the clerks; the former clerked for Pearson in 1832, and from thence continuously till 1836; the latter was clerk in 1834-5. These witnesses, in giving their depositions, had access to the books of P. F. Pearson & Co., and Pearson & Coffee. Their statements substantially agree, and in respect to the profits of the concern, they are corroborated by the proof of several of the merchants of Florence, where the business was carried on.

They substantially state, that the business of P. F. P. & Co. commenced in July, '33, and ended November, '35. That Donelson put into the concern, in cash, $5,000, and shortly after the dissolution withdrew $4,000, thus leaving $1,000 balance of the said advance due him. That reasonable profits of the concern, as shown by the sales, and as coming within their knowledge, amounted to $9,500, the sales being $69,830 67. Thus leaving Donelson's share of profits $4,750. They further show, that upon the dissolution of the firm of P. F. P. & Co., and the formation of the new firm of Pearson & Coffee, the stock of goods belonging to the first firm were invoiced and debited to the firm of P. & Coffee at the sum of $12,175. That this debit, with $1,-752 57, which accrued in favor of P. F. P. & Co. on account of other transactions, were credited with $6,143 72 paid by

P. & Coffee, thus leaving a balance due the firm of P. F. P. & Co. of $7,783 79. The profits which accrued upon the transactions of the firm in the buying and selling cotton, are shown by the testimony of Hunt and Rice, as well as by the books, to have been $3,082 36, which were received into the concern by Pearson.

We think it also sufficiently appears from the testimony, that the note given by Pearson, in the name of P. F. P. & Co., on the 23d September, 1836, to Joshua C. Oliver, for $760 54, and by him assigned to Montelius & Fuller, was given for the proper debt of Pearson & Coffee. Rice states that the goods purchased of Oliver were invoiced to Pearson & Coffee; were received and sold by them, *and that he understood from them both that they were to pay for them.* Further, that these goods constituted no part of the stock sold by P. F. P. & Co. to P. & Coffee.

With respect to the demands to Weakly and Harris, the proof is silent as to their consideration, and as it appears that Pearson & Donelson continued the use of the firm name after their dissolution, for the purpose of borrowing money and settling up the outstanding debts of the firm; we are not prepared to say that these demands are chargeable to Pearson & Coffee, but must consider them as constituting debts due from the firm upon which they purport to create an obligation. As to the demand due to Key, the witness, Rice, shows this was for money borrowed by P. F. Pearson & Co. and charged upon their books.

Having ascertained the demands and cross demands of the respective parties involved in this controversy, we come to consider the objections to the trust deeds set up by the defendants.

It is not necessary, as seems to have been supposed by the chancellor, that a party, to avoid a deed upon the ground of incapacity caused by drunkenness, was superinduced by the party claiming the benefit under the deed. Some decided cases do indeed go to this extent, but the true, and more reasonable doctrine is, that if the grantor, from excessive intoxication, is deprived of the use of his reason and understanding, so that he is utterly incapable of giving his serious and deliberate consent to the act, the deed may be avoided, both

at law and in equity, and this irrespective of any agency the party claiming under the contract may have had in superinducing the drunkenness.    1 Story's Eq. 235, § 231, note 2, and authorities cited; 2 Aik. Rep. 167; 2 Har. & Johns. R. 421; 1 Hen. & Munf. Rep. 70.    The act in such cases is wanting in an essential element in every contract, *the consent or agreement of the parties.*    In this case however, the proof taken in connection with the answers of the trustees, and the parties interested under the deeds, clearly preponderates in favor of the grantor's capacity, and this view renders it unnecessary to examine the point raised in the argument, whether the complainant can question the validity of these deeds upon this ground.

So also, with respect to the compensation allowed the trustee, Pope, for his services in the execution of the trust, the proof is insufficient to show that the commission provided by the contract to be paid him, was unreasonable.    That the compensation is more than is usually allowed for collecting and disbursing, &c., is certainly true, but we must take into account the character of the duties the trustee had to perform.    He was to collect many, and perhaps small amounts; his duties embraced a settlement of the affairs of a dissipated and reckless man, whose business was doubtless confused, and difficult to arrange.    Under these circumstances, and in the absence of proof that the allowance of 12½ per cent. was unconscienscious, we do not feel authorized to hold that such a provision in the trust deed would render it void upon its face.

Allowing the trust deeds to stand as security for the debts therein specified, it remains to consider, what are the equitable rights of the parties, with respect to their several demands.

It is perfectly clear, that there having been no settlement made, or balance struck, between Pearson & Donelson, the latter could have maintained no action at law to recover what may have been due him from the firm of P. F. Pearson & Co., and that his only remedy was in a court of equity. Philips v. Lockhart, 1 Ala. Rep. 521.

The law is well settled, that no one of the partners has any right or share in the partnership property, except what

remains after the full discharge and satisfaction of all debts and liabilities of the partnership, and that each of the partners has a right to have the firm effects applied to the discharge of the firm debts and liabilities, before any of the partners, or his personal representatives, or any individual creditor of such partner can claim any right or title thereto. Story Part. 125, § 97, and authorities cited. It is also laid down as a general rule, that each of the partners has a *specific lien* on the partnership stock, not only for the amount of his share, but for monies advanced by him beyond that amount, for the use of the copartnership. Rigley v. Casey, 4 Har. & McH. Rep. 167; West v. Skip, 1 Ves. 142; Hoxie v. Carr, 1 Sum. R. 173; Ex parte Ruffin, 6 Ves. 119; Story on Part. 137; Coll. on Part. 65. Although the creditors of the firm, before reducing their demands to judgment, have no such equitable rights in respect to the firm effects, as will enable them to resort to a court of chancery to have such effects appropriated to the satisfaction of their claims, yet as the balance due the partners can only be ascertained after the settlement of the partnership debts, each partner has the right to assert his equity in behalf of creditors, and to invoke the aid of the court when necessary, in enforcing the application of the firm effects to the extinguishment of their claims. Per Lord Eldon, Ex parte Ruffin, 6 Ves. 119, 126.

Applying these general principles to the case at bar, it is manifest that upon the dissolution of the firm of P. F. Pearson & Co., Donelson, the retiring partner, in the absence of any controlling stipulation between the parties, had an equitable lien upon the effects for the amount due him from the firm, after the payment of the firm debts. If the firm of Pearson & Donelson sold the goods on hand at the time of the dissolution, to Pearson & Coffee, as appears by the testimony of Rice and Bassett, the clerks, whether the latter firm agreed, as is stated in the bill, to pay the debts of P. F. P. & Co., or not, their indebtedness for said goods is assets of the firm of P. F. P. & Co., and subject to the satisfaction of the demands against that firm. Exclusive however of this indebtedness, the firm of Pearson & Coffee owed Oliver for goods purchased by and in the name of P. F. Pearson & Co.

97

in September, 1835, shortly before the dissolution of that firm, but which goods were received by, and sold for the use of the firm of P. & Coffee. For this debt, Pearson executed the note of P. F. P. & Co., and the estate of Donelson was properly liable to Oliver for it, although in equity and good conscience it was the debt of Pearson & Coffee. This was not a contingent liability of Donelson, as was insisted upon in the argument, but we think it fairly deducible from the proof, that as a member of the firm of P. F. P. & Co. he was at law, as between himself and Oliver, primarily bound for the goods. Now, the firm of Pearson & Coffee being insolvent, through the personal representative of the surviving partner, (Pearson,) seek to recover at law an account made with them by Donelson, which it is proposed, as shown by the purposes of the trust, to appropriate to the individual debts of Pearson. In our opinion, there is a natural equity growing out of the transactions between these parties, which utterly forbids that the insolvent firm of Pearson & Coffee should recover from Donelson, when at the same time he is liable for that firm, (and which was actually paid before the hearing,) for demands justly due from it. This point was so fully considered by this court in the Tuscumbia, Courtland and Decatur Rail Road Co. v. Rhodes, et al. 8 Ala. R. 206, 226, that it is unnecessary again to examine the numerous decisions upon which the doctrine rests. The principles settled by that decision meet our unqualified approbation, and we think, accord with the decisions of the most respectable courts both in England and America.

The court of chancery deduces the nature of the liability existing between the parties, from all the facts and circumstances attending the transactions out of which such liability arose; the intent, and not the form of the contract, is that which this court endeavors to carry out, if consistent with equity. Gordon v. Lewis, 2 Sum. C. C. Rep. 143. Now as respects the creditor, (Oliver,) from whom the goods, constituting the consideration for the indebtedness, were purchased by P. F. P. & Co., that firm, as we have said, was primarily liable, but as between the two firms, the proof shows, that Pearson & Coffee, who received and sold the goods, were to pay for them. This the witness, Rice, proves

he understood from both the parties, and the bill of the goods was entered upon the invoice of said firm. Donelson then stood as sponsor for said firm, and in our opinion was entitled to be indemnified against his liability for said debt, out of the firm effects of Pearson & Coffee. Nesbitt v. Smith, 2 Bro. C. C. 579; Antrobus v. Davidson, 3 Meriv. Rep. 569; Hungerford v. Hungerford, Gill Eq. Rep. 67; Burge on Surety, 378. This equitable right attached as soon as the debt fell due and default was made in its payment.

The equitable rights of Donelson, as respects his indebtedness, cannot be affected by the assignment to Messrs. Pope and Posey. They take but an equity in the accounts against Donelson, and if both their equities were equally meritorious, that which is first in point of time is best in right. 10 Peters's Rep. 177. The equities of the complainant being first in point of time, must therefore be preferred. See also Merrill v. Louther, 6 Dana's Rep. 305; 8 Ala. Rep. 226.

We arrive at the conclusion that the administratrix of Donelson has the right to an account with the administrator of Pearson, to ascertain the balance due Donelson from said firm, in which accounting should be embraced the amount received into said concern as profits on their speculation in cotton, as well as all debts paid by said partners respectively, or their representatives, due and owing by said firm. As to the speculation in cotton, it is evident that was a transaction without the scope of the ordinary dealings of the firm, and in which 'another partner was engaged, and that a settlement of the accounts, &c. involved in that enterprise could not be made in the present bill. But such is not the effort of the complainant. The amount of profits was adjusted between the partners, and the net balance was received into the firm of P. F. P. & Co., and which then became so much stock in trade, subject to be accounted for on final settlement. An account should also be taken as to the amount due from Pearson & Coffee to P. F. Pearson & Co. and also as to amount due to Donelson for demands subsisting against said Pearson & Coffee, and for which he was liable at the date of filing the original bill; these several items being ascertained, as well as the amount of the account made by Donelson with P. F. Pearson, the equities of the parties should be thus ad-

justed: Whatever balance is due from Pearson's estate to Donelson's, upon a settlement of the firm account of P. F. Pearson & Co. shall be set off against Donelson's liability to Pearson; and if it appears, upon taking the account, that the firm of Pearson & Coffee is indebted to the firm of P. F. P. & Co., Donelson's share of such indebtedness is to be added to whatever amount he has paid, or for which his estate was liable at the time of the filing of this bill, and this amount will be set off against the liability of the estate of Donelson to Pearson & Coffee.

We have said nothing respecting the firm debts of P. F. Pearson & Co. as the record does not disclose any debts subsisting against said firm, but if such debts do exist, as Pearson's estate is insolvent and Donelson's estate liable for them, they furnish an additional reason for stopping the amount in the hands of Donelson's executrix, rather than a justification for their withdrawal of it, especially as it is proposed to apply the fund when received to individual demands against Pearson.

The indebtedness of Donelson seems to be the only assets of the firm of Pearson & Coffee which complainant can identify; beyond that the complainant's relief cannot extend, with respect to the indebtedness of that firm.

Let the decree of the chancellor be reversed, and the cause be remanded, that a reference may be awarded to the master to state the accounts between the parties, after which a final decree will be rendered, adjusting the rights of the parties as above indicated. It is proper also to state, that in taking the account as to the debts paid by Donelson's administratrix, or in judgment, none but the necessary cost can be allowed, and the large bills of cost, as exhibited in the record, as well as the supreme court cost and damages, should be disallowed, as unnecessary.

Further: There appears to be no evidence as to any special agreement between Pearson and Donelson respecting the division of the profits and loss of the concern, or the interest which the parties have in the capital stock on hand at the dissolution. In the absence of such agreement, the law implies they are equal partners, and entitled to moieties.  Sto.

on Part. 31, and cases cited in note 3; Gould v. Gould, 6 Wend. Rep. 263; 9 Ala. 372.

We have deemed it unnecessary to review the various decisions referred to by the counsel for the defendants in error as applicable to the doctrine of set-off, and the inapplicability of those decisions of the English courts made under the influence of the bankrupt statutes, as furnishing correct guides in the proper construction of our statute of set-off. The case before us involves a principle of natural equity, growing out of the insolvency of Pearson & Coffee, fortified as it is by the lien of a retiring partner, which places it quite beyond the statute of set-off, and in our opinion calls loudly for the interposition of the power of the chancery court to prevent a threatened injury, which, if consummated, would be remediless. The equity of complainant's bill is upheld by many authorities. 1 Story's Eq. Jurisp. 630-1; Story on Part. 513, 519, 520; Calvit's Ex'rs v. Markham, et al. 3 How. (Miss.) Rep. 343; 8 Ala. Rep. 222; 5 Leigh's Rep. 34; 3 Ibid. 698; 1 Bibb, 519; 4 Monroe, 1; 5 J. J. Marshall, 659; 6 Dana's Rep. 32; Ibid. 305; Lindsay v. Jackson, (Walworth, Ch.) 2 Paige, 581-2; 2 Hamm. (Ohio) Rep. 320; 2 Eq. Cas. Abr. 10; 2 Vern. 117. To these many others might be added, but I forbear.