## WRAY'S ADM'RS vs. FURNISS.

[BILL IN EQUITY TO ENJOIN JUDGMENTS AT LAW ON NOTES GIVEN FOR PURCHASE MONEY OF LAND.]

1. *When vendee may enjoin judgment on account of vendor's insolvency.*—A vendee, with covenants of warranty, against whom a judgment is recovered on the notes given for the purchase money, and who is afterwards evicted from the land under title paramount, may enjoin the judgment in equity, when the estate of his vendor is insolvent, and the defence could not have been made at law.

2. *Notes executed on same day not necessarily parts of same transaction.*—Notes given for the purchase money of distinct tracts of land, but bearing date and executed on the same day, do not thereby become parts of the same transaction, nor so blended together that an eviction from one of the tracts will enable the vendee to enjoin the collection of the note given for the other.

3. *When demand for unliquidated damages against insolvent estate of assignor may be set off in equity against assignee.*—A demand for unliquidated damages, arising from a breach of covenant of title, may be set off in equity against a note founded on an independent consideration, when the vendor is dead and his estate insolvent; but to make it available as an equitable set-off against an assignee of the note. it must be shown to have accrued before notice of the assignment.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. WADE KEYES.

THIS bill was filed by Wm. H. Rives, and Sarah Jane, his wife, as administrator and administratrix of Philip A. Wray,

deceased, against Abram Martin, as administrator of Henry F. Slatter, deceased, and Henry Furniss. The original bill alleged, that on or about the 13th November, 1848, said Wray purchased from said Slatter four lots in the city of Montgomery, "known as lots number fifteen, sixteen, and seventeen on the south side of Washington street, and lot number nine on the east side of Lawrence street", at the price of $3,500; that said Slatter on that day executed to Wray his deed for said lots, in which he covenanted that he was lawfully seized in fee simple, and that said lots were free from all incumbrances; that said Wray executed three notes for the purchase money, bearing date on 4th December, 1848, one for $500, due January 1, 1850, one for $1,000, due January 1, 1850, and one for $2,000, due January 1, 1851; that Wray went into possession of said lots, under said purchase, and held them until his death, when they passed into the possession of his widow, the complainant Sarah Jane, who has since intermarried with said Wm. H. Rives; that said Slatter afterwards died in Montgomery county, his place of residence, and letters of administration on his estate were granted to Abram Martin, one of the defendants to the bill, on the 13th June, 1849, and he thereupon qualified and entered on the discharge of his duties; that said Martin, on the 12th January, 1850, reported said Slatter's estate insolvent, whereupon such proceedings were had that on the 5th March, 1850, said estate was declared and decreed insolvent by the Probate Court of Montgomery; that on the 2d April, 1850, said administrator (A. Martin) instituted a suit against said Wray on said notes for $500 and $1,000, each due January 1, 1850; that said Wray departed this life during the pendency of said suit, in Montgomery county, his place of residence, and letters of administration on his estate were granted to complainant Sarah Jane, on the 13th February, 1852; that said suit was afterwards revived by *scire facias* against said administratrix, and at the Fall term, 1853, a judgment was rendered against her for the amount of said notes and interest; "that said note for $2,000, given as aforesaid by said Wray to said Slatter in part payment for said lots, has been transferred to one Henry Furniss, a citizen of the city and State of New York; that said Furniss has instituted suit on

said note against complainant Sarah Jane, as administratrix of said Wray, in the Circuit Court of Montgomery, and will recover a judgment at the next term of said court, unless enjoined."

The bill further alleged, that on the 29th October, 1850, during the lifetime of said Wray, the "Montgomery Hall Company", a chartered corporation, instituted an action of ejectment against him and others, in the Circuit Court of Montgomery, to recover the possession of said lots purchased by him from Slatter; that said suit was revived against his administrators after his death, and at the Fall term, 1853, a judgment was therein rendered in favor of the plaintiffs, and their damages assessed at $2,178 20 ; that a writ of possession was afterwards issued on this judgment, under which the plaintiffs were put in possession of said lots by the sheriff; that said Slatter in his lifetime, and his administrator since his death, were notified of the pendency of said action of eject-ment, and required to defend it ; that said Slatter, in fact, at the time he sold and conveyed said lots to Wray, had no legal title to them, but the legal title was in said "Montgomery Hall Company". Complainants insist, therefore, that the covenants of title contained in said Slatter's deed have been broken, and that his estate, by reason of its insolvency, is un-able to respond in damages ; and they ask that said judgment and suit at law may be perpetually enjoined.

The defendant Furniss answered the bill, alleging that Wray executed four notes for the purchase money of the lots described in the bill—viz., one for $1,000, due January 1, 1849, another for $1,000, due June 1, 1849, another for $1,000, due January 1, 1850, and another for $500, due January 1, 1850, and not bearing interest till due; that the note for $2,000, held by himself, "was executed for another and wholly distinct consideration, growing out of another and wholly distinct transaction, which had no connection what-ever with the purchase of the lots mentioned in the bill", and which he describes as follows : "That said note was executed and delivered by said Wray to said Slatter, in part payment of certain other lots in the city of Montgomery—to-wit, lots number five west of Lawrence street, and number twelve, thirteen, fourteen, and forty-five feet off the east part of lot

number eleven, on the south side of Monroe street; which lots were purchased by said Wray from said Slatter, for the sum of $4,000, for the payment of which sum of money said Wray executed and delivered to said Slatter his two promissory notes, for $2,000 each, due and payable on the first day of January, 1851, and 1852, respectively"; and said note due January 1, 1851, is the note now held by respondent.

After this answer came in, the complainants filed an amended bill, in which they allege, " that on the 2d day of December, 1848, and about the time that said Wray purchased from said Slatter the lots described in their original bill, said Wray also purchased from said Slatter certain other lots in the city of Montgomery, known and designated as" (the same described in the defendant's answer); " that on said 2d December, 1848, said Slatter conveyed said lots last described, with covenants of warranty of title and freedom from all incumbrance; that the price, or consideration money, agreed to be paid by said Wray, for said last described lots, was $4,000; that on or about the 4th December, 1848, said Wray executed to said Slatter six promissory notes, all bearing date December 4, 1848,—one for $1,000, due January 1, 1849; one for $1,000, due June 1, 1849; one for $1,000, due January 1, 1850; one for $500, due January 1, 1850; one for $2,000, due January 1, 1851, with interest from date; and one for $2,000, due January 1, 1852, with interest from date;—that all of said notes were given for the purchase money of all of said lots. Since the filing of their original bill in this case, complainants have been informed that the first four of the notes above described were given specially for the purchase money of the lots particularly described in their original bill, and they believe the information to be true, though they have no personal knowledge of the facts. But complainants show, that all of said six promissory notes were executed on the same day, and that if said first four notes were not given specially for said lots first described, all said six notes were given together, in payment for all said lots; that said note for $2,000, now held by Furniss, was given in part payment of said several lots, and the notes on which (as alleged in their original bill) said Martin has recovered judgment, were either given specially in part pay-

ment of said lots described in said original bill, or were given generally in part payment for all said lots ; that all the other notes have been paid and satisfied.   And complainants insist, that whether said notes were given generally or specially, as above shown, or upon any other consideration, they are in equity entitled to set off against them their claim for damages against Slatter's estate, on account of its insolvency ; and they pray that the debts may be thus set off.

The chancellor, on motion, dismissed the bill for want of equity as against Furniss ; and the complainants now appeal from his decree.

N. HARRIS, with whom were ELMORE & YANCEY, for the appellants :

1. The fact that complainants were in possession of the lots at the time the judgment in favor of Slatter's administrator was rendered, prevented them from defending the suit at law. Chapman v. Glassell, 13 Ala. 54; Bliss v. Smith, 1 ib. 273; Clemens v. Loggins, ib. 623; also, 4 ib. 421.   As the defence could only be made in a court of equity, it was competent to make it after judgment at law.—Nelson v. Dunn, 15 Ala. 502; Calloway v. McElroy, 3 ib. 406.   The complainants' right, therefore, to enjoin the judgment obtained by Slatter's administrator, is clear.

2. The question then arises, whether the complainants are entitled to relief against the note held by Furniss.   Neither the original nor the amended bill shows that this note was assigned to Furniss before maturity, or that he paid value for it ; and the note itself, as appears from the exhibit, was not negotiable at any bank.   Even if the note had been negotiable and payable at a bank, the complainants' equity would be available against Furniss, unless he showed that he purchased before maturity, and paid value for it.—Thompson v. Armstrong, 7 Ala. 256; Marston v. Forward, 5 ib. 347.   If this note was given for the lots from which the complainants have been evicted, it is clear that they cannot be compelled to pay it, under the allegations of the bill.   If it was given for all the lots generally, then all the notes, being given at the same time, constituted one transaction, and the failure of consideration may be urged against either of them.   If it was given

upon any other consideration, the insolvency of Slatter's estate entitles the complainants to set off against it in equity the damages which they have sustained by the eviction from the other lots.—Tuscumbia, Courtland & Decatur Railroad Co. v. Rhodes, 8 Ala. 206; Hunter v. O'Neil, 12 *ib.* 40. Having this right of set-off, complainants are entitled to come into equity to enforce it, and Furniss is a proper (if not necessary) party defendant to the bill.—Story's Equity Pleadings, § 72; Blakey v. Blakey, 9 Ala. 394; Morgan v. Morgan, 3 Stew. 383; Smith v. Peters, 1 Stew. & P. 124.

HILLIARD & THORINGTON, *contra:*

Furniss is the holder of a note which has no connection whatever with the transaction out of which complainants' demand arises, but which was given for lots from which they have never been evicted, and of which they now hold peaceable possession. The bill does not allege that the six notes were given generally for all the lots ; nor that the note held by Furniss was transferred to him after maturity ; nor that it was transferred without consideration ; nor that he had notice of any equity against it. On the contrary, the presumption is, that the note was transferred for valuable consideration, and before maturity ; and against this presumption of law the bill alleges nothing. The principle, then, asserted by the bill, is, that the collection of a note, given for the purchase money of land of which the vendee has peaceable possession, and transferred before maturity and for valuable consideration to a stranger, will be enjoined in equity, merely because the vendor's estate, by reason of its insolvency, cannot respond in damages for a loss sustained by the vendee from another distinct transaction. Such a principle cannot be sustained by any authority whatever, nor is it supported by any of the cases cited by the appellants' counsel. The utmost latitude which can be given to the doctrine on which they seek to rest their case, is this :—If a chose in action, not assignable at law, be assigned, a claim against its original owner, although disconnected from it, coupled with the fact of his insolvency, constitutes an equity against the assignee ; or, if the chose in action be assignable, and be assigned after maturity, or with notice of a claim against it, then also the

insolvency of the original owner constitutes an equity against the assignee; but, where a chose in action, assignable at law, has been transferred for valuable consideration and without notice of a counter demand, then the equity must arise out of the same transaction, and the fact of insolvency is immaterial.

CHILTON, C. J.—The bill shows that the lots, to which there is a failure of title, constitute the consideration of the notes held by Martin as the personal representative of Slatter; that he has obtained a judgment, and the amount will be collected out of the estate of Wray, unless enjoined; that Slatter's estate is insolvent, and if it is allowed to collect the judgment, the estate of Wray must lose the demand existing against the estate of Slatter. It further shows, that the defence now insisted upon could not have been set up at law to prevent a recovery upon the notes. It may readily be conceded, then, that as to the demand which Slatter's administrator has, the jurisdiction of the court of equity, arising upon the face of the bill, is ample.

But this is not the question before us. Does the bill show an equity in favor of the complainants, as against Furniss, who is assignee of one of the notes executed on the same day with those on which the judgment in favor of Slatter's administrator was rendered, but given for lots to which there is no failure of title, and as to which the covenants in the deed, which are alleged to have been broken, have nothing to do?

That the notes were given on the same day, does not, of itself, so connect them as to make them parts of the same transaction. The consideration was distinct, and does not become blended merely because the notes bear even date. The covenants in the deed from Slatter, alleged to have been broken, have no reference to, nor connection with, the lots for which the note held by Furniss was given, nor with the note itself, so as to enable the court to work out an equity in favor of the complainants as inherent in the transaction.

Does an equity exist, regarding them as distinct transactions? The estate of Wray has an equity against the estate of Slatter, to the extent of the notes given for the lots to which there is a failure of title, and it has a demand against

said estate for the residue ; but as to this residue, it is but a cross demand, existing in the form of damages for a breach of the covenant contained in the deed. These damages are unliquidated, and could not, ordinarily, be the subject of set-off, either in a court of law or equity. But it is insisted in the case before us, that an equity attaches to have the set-off allowed by reason of the insolvency of Slatter's estate. This would certainly be a good ground for equitable interposition as against Slatter's estate ; "but, although the insolvency of one of the mutual debtors, *existing at the time of filing the bill*, would be a sufficient ground of equitable jurisdiction as be-tween them, yet, where one of the mutual debts, existing in the form of a note, is assigned to a third person, it seems clear that the insolvency of the obligee, commencing after the obligor has notice of the assignment, can never attach as an equity against the note in the hands of the assignee, nor furnish in itself a ground for setting off against it the debt of the obligee to the obligor."—Wathen's Ex'r v. Chamber-lain, 8 Dana, 164. The equitable right of set-off is given by the insolvency of Slatter's estate. But for this, so far as regards the demand held by Furniss, which is independent of the demand accruing upon the breach of the warranty, there would exist no equitable right of set-off. Now when did this equity accrue? The bill does not inform us, and in this it is fatally defective and void of equity. For we take the true rule to be, as asserted in the case above cited, and in Ridg-way v. Collins, 3 Mar. 412, "that an equity against an obli-gee, to be made available against his assignee, must have existed before notice of the assignment." This seems to har-monize with the rule which applies at law as prescribed by the statute.—Clay's Digest, 381, § 6.

In the case of The Tuscumbia, Courtland and Decatur Rail-road Co. v. Rhodes, 8 Ala. 206, the transfer only vested an equitable interest in the assignee, the subject-matter being an account ; and besides this, the company was insolvent when the assignment was made. The same may be said of Donald-son's Adm'r v. Posey, 13 Ala. 752, 770, where the contest was between two persons claiming equities, and we gave the preference to the older. The cases of Hunter v. O'Neil, 12 Ala. 37, Cullum v. Branch Bank at Mobile, 4 *ib.* 21, and

Long v. Brown, *ib.* 622, show that the complainants have an equity as against Slatter's administrator, but none of them apply to cases like the present, where the rights of an assignee are involved.

The bill merely states the assignment of the note by Slatter to Furniss, giving no date, and that the estate of Slatter was decreed insolvent by the Probate Court, on the 5th day of March, 1850. For aught that appears, the assignment and notice of it accrued long before the insolvency ; and as it is incumbent upon every complainant to show by his bill a. title to the relief which he seeks, and none is shown here, the bill, as to Furniss, was properly dismissed.

Decree affirmed.