## CARROLL vs. MALONE.

[BILL IN EQUITY BY OBLIGOR AGAINST ASSIGNEE TO ESTABLISH EQUITABLE SET-OFF.]

1. *Burthen of proof as to negative averment.*—Where the bill alleges a negative, *é. g.* that complainant had no notice of the assignment of a note against which he seeks to establish an equitable set-off, and the answer avers notice, the burthen of proving notice is on the defendant, and not on the complainant to disprove it.

2. *Equitable set-off against assignee of bond.*—If a note under seal is assigned by endorsement after maturity, the assignee takes it subject to all equitable defences existing in favor of the maker prior to notice of the assignment, whether they grow out of the same, or out of a different transaction. (WALKER, J., *dissenting*, held that, where the assignee acquired the legal title by endorsement, without notice of the maker's equity, he ought to be protected.)

3. *Estoppel by deed.*—If the maker of a note, having an equitable set-off which is available against an assignee after maturity, executes a mortgage to the assignee to secure the payment of the note, this does not estop him from afterwards setting up against the assignee his equitable set-off.

APPEAL from the Chancery Court of Franklin.

Heard before the Hon. A. J. WALKER.

This bill was filed by George W. Carroll against Goodloe W. Malone and John L. Malone. The material facts of the case are stated in the opinion of the court. On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

R. W. WALKER, and WM. COOPER, for the appellant:

1. Independent of our statute in reference to the assignment of bills, bonds, &c., Carroll would be entitled to the re-

34

lief sought by his bill. The suit of Malone v. Carroll was founded on Carroll's *bonds*, payable to Clark T. Barton. These bonds, according to the rules of the law merchant, were not negotiable instruments; bills of exchange and promissory notes payable to order, alone belonging to that class. These negotiable instruments, according to the theory of the law merchant, were the representatives at once of money and of credit, and were placed, for the purposes of commerce, under the peculiar protection of that law, and were distinguished, in many respects, from all other choses in action. The general rule governing the assignment of choses in action, other than these negotiable instruments, is, that the assignee takes them subject to all equities existing at the time of the assignment, whether arising out of the same transaction or not, and that the right of set-off is one of these equities.—Tuscumbia & Decatur Railroad Co. v. Rhodes, 8 Ala. 223, and cases there cited. When these bonds were executed by Carroll, the only instruments which, under our statutes, were governed by the commercial law, and belonged to the class of negotiable instruments, were bills of exchange and promissory notes payable in bank. Carroll, then, our statutes aside, would undoubtedly be allowed, in a suit against him by the assignee of these bonds, to interpose every equitable defence to which he would have been entitled in a suit by the obligee; and, unless these statutes have altered the rule applicable to such instruments, the facts in this case make out a clear case of equitable set-off. The equitable rights growing out of insolvency, attach immediately, and as soon as it exists, and cannot be defeated by a subsequent assignment.—8 Ala. 223, and cases cited.

Does our statute, in reference to the assignment of bonds and notes, take away this right of the obligor? That statute simply makes these bonds assignable by endorsement, and provides that, in all suits by the assignee, all discounts, payments and sets-off, made or had prior to notice of the assignment, shall be allowed. Was it the object of this statute to place bonds on the footing of negotiable instruments in all respects, and to limit the defences which the obligors were previously entitled to make; or simply to make them assignable by endorsement, and to extend the right of the obligor to all defences acquired prior to notice of assignment? The statute

diminishes, instead of increasing the number of negotiable instruments, in the sense in which that term is used in the mercantile law, for, before that statute, promissory notes payable to order were negotiable instruments, governed by the rules of the commercial law, and therefore the assignee took them discharged of all the equities between the original parties; but the statute takes these notes out of the privileged class, and the assignee now takes them subject to all defenses obtained by the maker prior to notice of the assignment. This statute was intended, then, not to impair, but to enlarge the pre-existing rights of the obligors in bonds. The assignees of such bonds, therefore, take them clogged with all the equities existing between the original parties prior to notice of the assignment. Previous to the notice in this case, the equitable rights of Carroll, now sought to be enforced, had attached; and he can set up these rights as fully against the assignee, as he could against the obligee.

2. Again, when these bonds were assigned by Barton, they were overdue, and Malone therefore received them subject to every equity that would have availed against the obligee. O'Callaghan v. Sawyer, 5 Johns. 118; Tuttle v. Beebe, 8 *ib.* 153; Wells v. Tate, 5 Blackf. 306; Hurd v. Earle, 4 *ib.* 184; Mixon v. English, 3 McCord, 549; Wood v. Warren, 19 Maine, 23; Burnham v. Tucker, 18 *ib.* 179; Caine v. Spann, 1 McMullen, 258; Perry v. Mayes, 2 Bailey, 354. See, also, the following cases: 16 Wend. 659; 11 *ib.* 504; 17 Johns. 330; 7 Leigh, 278; 19 Wend. 397; 11 B. Monroe, 73; *ib.* 212. The cases which hold that the assignee of overdue paper takes it subject only to the equities which arise out of the same transaction, are cases which refer entirely to instruments which were considered negotiable by the rules of the law merchant. The precise point here raised, it is believed, has never been decided against the appellant; *i. e.* that the assignee of discredited unnegotiable paper takes it subject only to those equities which arise out of the paper itself.

The very recent decision of this court, in the case of Wray's Adm'rs v. Furniss, 27 Ala. 471, is conclusive of this case. See, also, Wathen v. Chamberlain, 8 Dana, 164; Ridgway v. Collins, 3 Marsh. 412.

3. Carroll has done nothing which can estop him from in-

sisting on his right of equitable set-off.—Andrews & Bro. v. McCoy, 8 Ala. 920; Clements v. Loggin, 2 *ib.* 514; 4 Blackf. 356; Livingston v. Dean, 2 Johns. Ch. 479; Clute v. Robinson, *ib.* 612; Smith v. Pettus, 1 Stew. & P. 107; Taylor v. Bates, 5 Cowen, 378.

4. The allegation of the answer, as to the giving of notice of the endorsement to Carroll, was suggestive of new matter, and not responsive merely.—Carpenter v. Dunn, 6 Ala. 726; Wellborn v. Tiller, 10 *ib.* 311; 11 Johns. 63; 1 *ib.* 91; 11 Ves. 574; 4 Paige, 23; 2 Madd. Ch. Pr. 137.

JOHN A. NOOE, *contra*, contended that there was no equity in the bill, because,—

1. The assignee of a note takes it subject only to such equities as exist at the time of the assignment, and not such as may exist up to the time of notice of the assigmnent. This was expressly decided in Andrews & Bro. v. McCoy, 8 Ala. 929.

2. The equity which attaches to a note, in the hands of an assignee, must grow out of the transaction for which the note is given.—1 Stew. & P. 107; 7 Porter, 543; 8 Ala. 122; *ib.* 929; 13 *ib.* 752; 14 *ib.* 22; Chitty on Bills, 246; Story on Promissory Notes, § 178; 5 Mason, 214.

3. Carroll is estopped by his admissions, and by the execution of his mortgage, from setting up any equity, or equitable set-off, against Malone.—11 Ala. 422-5; *ib.* 472; *ib.* 976; 14 *ib.* 16; 16 *ib.* 175; 19 *ib.* 490; 22 *ib.* 548; 23 *ib.* 271; 2 Humph. 51; Greenl. Ev. §§ 24, 27, 184, 196, 205, 207, 208.

4. A party who seeks relief in equity must act promptly, upon first knowledge of the facts which constitute his equity. Carroll's bill shows that he was guilty of great laches and neglect, in not informing Malone of his equity; and therefore he is not entitled to the relief claimed.—14 Ala. 16; 2 U. S. Digest, 205; 2 Ph. Ev. 199, note; Leading Cases in Equity, vol. 2, pt. 2, p. 216.

5. Admitting that the assignee of a note takes it subject to all the equitable sets-off, which the maker may have against the assignor up to the time of notice of the assignment, the proof shows that Carroll had notice before he became Barton's surety. Malone's answer positively avers notice to

Carroll, and the answer is responsive to the bill on this point, as Carroll had executed to Malone a mortgage to secure the payment of the notes.—Brashear v. West, 7 Peters, 608; Wray's Adm'rs v. Furniss, 27 Ala. 471; 16 *ib*. 602; 6 *ib*. 718; 4 *ib*. 60; 3 *ib*. 478; 1 Walker's (Mich.) R. 294; 2 Blackf. 330; 1 Conn. 711.

6. The proof sustains the answer as to notice. The deposition of William Winston directly disproves the averment of the bill, which is relied upon as equivalent to an averment of the want of notice. The depositions of Goodloe and Garrett prove facts which are inconsistent with this averment of the bill; and Carroll's own conduct towards Malone, in not intimating to him that he had any objection to the payment of the notes; in his repeated promises of payment; in his executing a mortgage to Malone to secure the payment, eighteen months after the assignment, and twelve months after he is proved to have had notice of the assignment, and at a time when he, as executor of Barton, had reported the estate insolvent, and when he knew that he was bound as surety to pay the amount which he now seeks to set off against Malone; and his causing Malone to indulge him in the payment for five years,—all these circumstances tend to show that he had notice of the assignment to Malone before he became Barton's surety, and sustain the allegation of the answer upon the question of notice.

STONE, J.—The bill in this case was filed to obtain the benefit of an equitable set-off. The important points made by the pleadings and proofs are, that Carroll executed his notes to Clark T. Barton, for near $9,000, dated and due January 1, 1847; that when these notes were over due, viz., not earlier than February, nor later than April, 1847, Barton traded and endorsed said notes to Goodloe W. Malone, in part payment of a pre-existing debt, and soon after this, Goodloe W. Malone traded and endorsed them to John L. Malone, likewise in part payment of a pre-existing debt; that Carroll incurred liabilities, as accommodation endorser for Barton, on May 7, 1847, of over $5,000, and on July 13, 1847, of $2,000; and that on July 8, 1848, Carroll executed a mortgage to John L. Malone, securing the notes so transferred by Barton.

Two other questions of fact, raised by the pleadings and proof, are necessary to be here settled: first, was Barton insolvent, and when did he become so; and, second, when did Carroll receive notice of the endorsement of his notes by Barton to Malone? We are fully satisfied that Mr. Barton was insolvent long anterior to May 7, 1847. It is insisted in argument, by the appellee, that the answers, where they deny that Carroll had notice, and aver that he (Carroll) did have notice of the assignment of the notes to Goodloe W. Malone, before May 7, 1847, are responsive to the bill, and are therefore evidence of the facts thus set up. In support of this position, we are referred to Brashear v. West, 7 Peters, 608. The citation sustains the argument, but we are not prepared to adopt the rule there laid down. No authorities are cited in support of it; and it is in direct conflict with our decisions on the same point.—Walker v. Palmer, 24 Ala. R. 358, and authorities cited; McCauley v. State, 26 Ala. 135; Carpenter v. Devon, 6 Ala. 718.

The complainant, Carroll, to make a case for relief, was compelled to aver, in substance, that he incurred the liabilities for Barton before he had any notice of the assignment of his notes. This he in effect did, when he stated that "he unhesitatingly endorsed for Barton, knowing that he was indebted to him, and relied upon his indebtedness as protection against loss." In another place the bill says, "Now, after incurring the said several liabilities for said Barton by your orator, and when your orator had not yet been compelled to pay any of them, and learning that said Barton had transferred and traded away to Goodloe W. Malone, of said county, the two notes," &c. The answers aver notice. To hold the answers, under such circumstances, to be proof of the affirmative fact, would be to establish the monstrous proposition, that the necessary averment of a negative in pleading imposes on the party thus pleading the necessity of proving that negative, when put in issue by the adverse party.

Some slight circumstances are relied on, as tending to prove that Carroll had notice; but they are insufficient for the purpose. We are, therefore, unable to find from the proof that Carroll had notice of the assignment, until after he had incurred the liabilities for Barton.

It is further shown by the pleadings and proofs, that Carroll paid the two debts of $2,000 each, and half of the debt of $3,352, before he filed his bill.

Two questions are presented: 1. Under these facts, is Carroll's equity superior to Malone's? 2. Is Carroll estopped from asserting his claim of set-off, by the mortgage he executed?

The doctrine of equitable set-off has been frequently before this court. In the case of the T. C. & D. R. R. Co. v. Rhodes, 8 Ala. 206, the question was elaborately considered; and, after being twice argued, the court allowed the set-off, in a case precisely like the present, with the exception, that in this case the *legal title* to the note or bond passed to Malone, while in that, the debt of Rhodes was unassignable, and Sherrod acquired only an *equitable interest* in it. In that case may be found a careful and labored collation of the authorities, English and American. The court declared the law to be, that Rhodes was entitled to the set-off claimed; but, if his debt had been assignable, and had been endorsed to Sherrod, the opinion asserts that the set-off would not have been allowed. The cases of Robertson v. Breedlove, 7 Porter, 543, and Donelson v. Posey, 13 Ala. 752, lay down the rule in substantially the same language.

In the authorities from this court above quoted, all is mere *dictum* that speaks of a distinction between unassignable choses in action, and notes or bills endorsed after due; but the same distinction is observable in a strong array of authorities, some of which are noted on the briefs of counsel.

Another distinction arose, early in the history of this question, which bears on the point in issue. It is said in the books, that assignees of bills or notes, who receive them after they are due, and thus dishonored, take them subject to all defences, both legal and equitable, which the promisor could assert against the payee. In the case of Brown v. Davis, 3 Term R. 80, the court uses the strong language, that under such circumstances, the party who receives the note, "*takes it on the credit of the person who gives it to him.*" The qualification is, that the *equities* to which a bill or note thus traded is subject, are those which *arise out of the bill or note transaction itself.* A strong array of authorities recognizes this distinction. Many of them are collected and reviewed in

Greene v. Darling, 5 Mason, 201; Burrough v. Moss, 10 B. & C. 558; Ord v. White, 3 Beav. 357; Ford v. Stuart, 19 Johns. 342; Tuttle v. Beebe, 8 *ib.* 152.

On the other hand, many able decisions discard this distinction, and hold that, when chancery can rightfully take jurisdiction of the subject, it will give the maker of the bill or note the benefit of all the equities he may have, whether connected with the transaction or not.—Mosteller v. Bost, 7 Iredell's Eq. Cases, 39; Wathen's Ex'r v. Chamberlain, 8 Dana, 164; Watkins v. Worthington, 2 Bland's Ch. 509; Ainsworth v. Ainsworth, 2 Cush. (Miss.) Rep. 145; Blake v. Langdon, 19 Vt. 485; Gay v. Gay, 10 Paige, 369.

Our own court, in the recent case of Wray's Adm'r v. Furniss, 27 Ala. 471, hold the same doctrine. In the case last cited, the question was directly presented; and, although the bill was dismissed for another reason, the opinion still stands as an authority on the turning point of this case. From an authority so recent, we do not feel at liberty to depart, unless upon conviction of fundamental error. Is there any thing in the distinction asserted in the case of the T. C. & D. R. R. Co. v. Rhodes, *supra?* Will a departure from the *dictum* in that case, overthrow any great conservative principle of the commercial law?

After giving this question a careful consideration, we are unable to perceive any solid foundation on which to rest the distinction asserted. The notes being transferred when *over due*, and consequently *dishonored*, the transferree stands affected with notice of all defences, legal and equitable, which the promisor could have maintained against the payee. The endorsement simply places him in the legal and equitable position in which the payee stood before endorsement. He acquires the rights of the payee, but he takes them with their disabilities. No one will contend that the complainant in this case would not be entitled to relief against the notes, if still held by the payee. He is entitled to the same against the endorsee after dishonor. The insolvency of Barton raises an equity against him; the endorsement of the notes after they were due and dishonored, coupled with the insolvency of Barton before Carroll had notice of the assignment, extend that equity, so as to embrace the endorsee within its remedial power.

We hold, therefore, that Carroll's equity is paramount to Malone's; or, in other words, that Malone has no other equity than than that which could have been asserted by Barton. This being the case, his legal title to the notes avails him nothing.

The statute makes bonds, as well as bills and notes, assignable by endorsement. This destroys all distinction between them, affecting this case.—Clay's Digest, p. 381, § 6.

The mortgage executed by Carroll to Malone does not estop him from asserting his equitable right of set-off. See the authorities on the briefs of counsel. See, also, Clements v. Loggins, 2 Ala. 514; Griggs v. Woodruff, 14 Ala. 9; Taylor v. Bates, 5 Cow. 376; Finn & Dulaney v; Barclay, 15 Ala. 626; Ware v. Cowles, 24 Ala. 446.

The decree of the chancellor, dismissing the bill, is reversed, and the cause remanded for further proceedings, not inconsistent with the principles here decided.

RICE, C. J., concurs in this opinion.

WALKER, J.—I respectfully dissent from the decision of the majority of the court, on the main question of set-off in this case. I think the set-off against Malone, who acquired the legal title to the note mentioned in the pleadings by endorsement, and without notice of Carrol's equity, which grows out of an independent transaction, ought not to be allowed. In my opinion, all the elementary books, all the English decisions, and the principle laid down in all of our own decisions on the subject, except that of Wray v. Furniss, 27 Ala. 471, and many (if not most) of the American authorities, which pertain to the question, as well as the policy of the law as to the transfer of notes, are opposed to the conclusions attained by my brothers. I do not regard the decision in Wray v. Furniss, *supra*, as an authority in favor of the position of the majority of the court. In my judgment, this court ought not to depart from the principle laid down in the case of the T. C. & D. R. R. Co. v. Rhodes, 8 Ala. 206. I express an opinion in this case, differing from that of my brethren, with reluctance, and only in obedience to my sense of duty.