Ingraham v. Foster.

## INGRAHAM *vs.* FOSTER.

[BILL IN EQUITY FOR SETTLEMENT OF PARTNERSHIP ACCOUNTS—CROSS BILL SETTING UP FRAUD.]

1. *Difference between contract of partnership and agreement to form parnership.*—Where the written articles recite that the parties "have entered into a partnership," the terms and stipulations of which are stated, and fix no time for its commencement, they evidence not a mere agreement to form a partnership, but a subsisting contract of partnership from the day of their date.

2. *Rescission of contract of partnership on account of fraud.*—Where one partner files a bill against his several partners, for a settlement of the partnership accounts and his share of the profits, a fraud perpetrated by him on one of the defendants, in a former partnership between them individually, by means of which he procured the funds contributed as his share of the capital of the new firm, is no ground for annulling or rescinding the contract of partnership. (RICE, C. J., *dissenting,* held that such fraud was a bar to the relief sought by the bill.)

3. *Amendment of bill.*—Where the original bill, seeking a settlement of a partnership in a steamboat, and the ascertainment of plaintiff's share of the profits, alleged that plaintiff had sold his interest in the boat to a third

person, who was entitled to his share of the profits accruing from the time of the sale ; while the amended bill alleged, that said transfer, though absolute in form, was intended only as a mortgage or security,—*held*, that the repugnancy between these conflicting allegations was not so great as to render the allowance of the amendment improper.

4. *Equitable set-off.*—An equitable demand, accruing to one of the defendants from a fraud perpetrated on him by the plaintiff in a former partnership between them, is available as a set-off in favor of such defendant, when plaintiff files a bill for a settlement of a new partnership between them and others, and is shown to be insolvent.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. WADE KEYES.

THE original bill in this case was filed by James G. Ingraham, the appellant, against Phineas O. Foster, Roger A. Hearne, and James A. Gage ; alleging that, in April, 1849, complainant and defendants entered into written articles of partnership for the building of a steamboat, to be employed in trade in the bay of Mobile,—each partner to pay one fourth of the expenses, and to have one undivided fourth interest in the boat and profits ; that a boat was built in pursuance of this agreement, called the *Swan*, and employed by the parties as specified in their articles of partnership ; that the command of the boat was entrusted to Foster, who, with said Gage, received all the profits realized by it, which amounted to a large sum ; that complainant sold out his interest in said boat, on the 9th April, 1851, to Jacob B. Walker, who, "from that time, became entitled to the interest in said boat which complainant had possessed," but not to any share of the profits which had previously accrued ; that complainant had frequently demanded a settlement of the accounts connected with the boat's business, but the defendants refused to make any settlement, and would not let him examine the books and accounts. The prayer of the bill was for a discovery and account of the partnership accounts, and for a decree against the defendants for complainant's share of the profits realized by the boat.

An amended bill was afterwards filed, by leave of the chancellor, alleging that the transfer by complainant to Walker, "though absolute in form, was nevertheless in-

tended as a security merely, and was designed to secure said Walker in the re-payment of certain sums of money then owing to him by complainant, and of other sums which Walker agreed to advance to complainant from time to time"; "that the contract was made to assume the form of an absolute sale, to enable Walker the more readily to assert his rights, and to receive the proportion of the profits of said boat which might afterwards accrue to him"; that Walker and complainant have, "within a short time past," had a settlement of their matters of accounts, on which it was ascertained that there was a balance in Walker's favor of $2,221 62; that Walker's bill of sale creates a lien on complainant's interest in the boat for the payment of this balance, and, after its payment, complainant is himself entitled to the residue of his original share of the profits realized by the boat from the time of the transfer. The amended bill further alleged, that the defendant Gage had transferred his interest in the boat to George Blakesley, against whom process was prayed as a party; and added a prayer for the sale of the boat, and for other and further relief.

The defendants filed separate answers to each of the bills; admitting, in their answers to the original bill, the formation of the partnership, the building of the boat, and the realization of profits from its business. Foster alleged, in his answer to the original bill, that at the time said partnership was formed, and for some time prior thereto, he and complainant were equal partners in two steamboats, called the *Inda* and the *Belle Creole*, which were engaged in the Mobile trade; that complainant was the cashier and book-keeper of the partnership, received all the moneys, made all the disbursements, and had charge of the books and papers; that the business realized large profits, and their success induced them to enter into the purchase of the new boat, into which the other defendants were admitted as partners; that a portion of the funds invested in the purchase of the *Swan* were drawn by him from the firm of Ingraham & Foster in their other business; that complainant made false and fraudulent entries on the books of the *Inda* and *Belle*

*Creole*, by which he defrauded defendant out of large sums; that, if said books had been honestly and correctly kept, defendant's share ot the net profits would have amounted to more than the entire sums drawn from said partnership and invested in the purchase of the new boat; that no other moneys were advanced by complainant towards the purchase of the new boat; that defendant, on discovering the frauds perpetrated on him by complainant, insisted on an inspection and examination of the books of the *Inda* and *Belle Creole*, and a settlement of the partnership accounts connected therewith, which the complainant refused; that the complainant is insolvent, and that the pretended transfer to Walker was fraudulently intended to defraud defendant of his rights. It was prayed that this answer might be taken as a cross bill; that Ingraham might be compelled to come to a settlement and account of the partnership matters connected with the *Inda* and *Belle Creole;* and the general prayer, for other and further relief, was added. No controversy arose respecting the interests of the other defendants to the original bill, nor did they in any manner connect themselves with the matters at issue between Ingraham and Foster.

All the defendants demurred to the amended bill, on account of its inconsistency with the original bill; and the chancellor sustained the demurrer, but dismissed the amended bill without prejudice. A reference of the matters of account connected with the *Swan*, and also of the accounts between Ingraham and Foster connected with the *Inda* and *Belle Creole*, was ordered by the chancellor; and, on final hearing, after the coming in of the master's report, he dismissed the complainant's bill.

The chancellor's decree is now assigned as error.

E. S. DARGAN, for the appellant.—1. The amended bill is not repugnant to the original, nor does it make a new case. It asserts the same title, and seeks the same relief; correcting only an erroneous statement of the original bill, and somewhat enlarging the measure of relief to which the plaintiff was entitled. That the amendment

was allowable, see 1 Dan. Ch. Pr. 454, and note; 5 Wendell, 660; 10 Pick. 128; 1 Johns. Ch. 184; 1 Edw. Ch. 46; Story's Eq. Pl. § 884.

2. The fraud, alleged to have been perpetrated by Ingraham, in the matters of the *Inda* and *Belle Creole*, is no bar to the relief sought in this case. The principle is admitted, that a plaintiff cannot recover when he requires the aid of an illegal contract. But, if the plaintiff can prove his case without reference to the illegal contract, or without bringing it before the court, there can be no legal objection to his recovery. If the illegal contract is at an end, and new relations have sprung up between the parties, even though the consideration of the new contract be partly founded on the illegal transaction, or partly connected with it, the new contract may be enforced.—Phalen v. Clark, 19 Conn. 421; Boothe v. Hodgson, 6 Term Rep. 405; Fivaz v. Nicholl, 2 Man., Gr. & Scott, (52 E. C. L.) 500, 511. The partnership between Ingraham and Foster, in the *Inda* and *Belle Creole*, is totally separate and distinct from the partnership between them and others in the *Swan*: the parties and subject-matter are both different.

3. Foster filed a cross bill, seeking relief against the alleged fraud in the matter of the *Inda* and *Belle Creole;* and the principle is well-settled, that he who seeks equity must do equity.—1 Story's Equity, § 301. Both parties are before the court, each seeking relief against an alleged fraud committed by the other; and no reason exists why the court, instead of dismissing both bills, should not go on and do complete justice between the parties.

Wm. G. Jones, *contra.*—1. The demurrer to the amended bill was properly sustained, on account of the repugnancy between its allegations and those of the original bill. Larkins v. Biddle, 21 Ala. 252. The amended bill does not allege that, when the original bill was filed, the plaintiff was ignorant of the facts; indeed, the facts must have been within his personal knowledge. He does not pretend that the false statements of the original bill were made by accident or mistake. He occupies, then, the

position of one who knowingly makes a false statement in his original bill, and attempts to perpetrate a fraud on the court, in making it instrumental in carrying out his fraud on another.

.2. The gross frauds committed by Ingraham, in the matters of the *Inda* and *Belle Creole*, preclude him from the relief which he seeks. It is a maxim of courts of equity, which also prevails to some extent in courts of law, that a party who seeks relief must come into court with clean hands. The application of this principle, in its different phases, fully justifies the decree of the chancellor.—Collins v. Blantern, 2 Wilson's Rep. 341–10; Creath v. Sims, 5 How. (U. S.) R. 204; Bartle v. Coleman, 4 Peters, 184; Dilly v. Barnard, 8 Gill & John. 170; Taylor v. Pugh, 1 Hare, 608; 2 Story's Equity, §§ 736–49; Fonblanque's Equity, (3d Amer. ed.) 723.

3. All the money advanced by Ingraham, in building the *Swan*, was really and equitably the money of Foster; and it is a well-settled principle of equity, that when the title to property bought is taken in the name of one man, but the money paid belongs to another, a trust results in favor of the latter, and he is considered in equity as the true owner.—2 Story's Equity, §§ 1201–07.

WALKER, J.—It is necessary to inquire in this case, what is the object of the complainant's bill. Is it a bill for a specific performance, and is the complainant's right to relief to be determined according to the rules which apply to suits for a specific performance of contracts? It is certain that the complainant's bill is not designed to be an application for the specific performance of a contract, for it avers the existence of the partnership, its continuance for some time, and the receipt of large profits, and only prays a recovery of the complainant's share of the profits. Upon the allegations and prayer of the bill, the complainant would not be entitled to the specific performance of an unexecuted contract. It may, therefore, be conceded that, if the proof makes a case where the complainant can only have relief by way of specific performance, the bill was properly dismissed by the chancellor.

A specific performance is necessary, where the contract is executory—where the stipulation is *to do* something; as, for instance, to convey, as distinguished from an actual conveyance; or to form a partnership, as distinguished from a deed creating an actual partnership, or evidencing a subsisting partnership, and actually clothing the members of the concern with the character of partners. 2 Story's Eq. Jur. §§ 714, 722. We find the distinction stated in Collyer on Partnership, § 202, as follows : "*Before the partnership is actually constituted,* there is frequently a written agreement between the parties *to enter into partnership ;* which agreement is not considered as the *final* contract between them, but merely as expressing an intention that such contract shall be completed by subsequent acts, or by articles of partnership. It should be noticed, therefore, before we examine the different clauses of the articles themselves, that a court of equity will, under certain circumstances, compel the specific performance of an *agreement to enter into partnership.*"

Was there between the parties, when this bill was filed, a subsisting partnership, or a mere agreement to form a partnership ? The copartnership articles witness that the parties "*have*" entered into a partnership for the building of a steamboat, &c., of which each of the parties is to own one fourth. These articles evidence a subsisting partnership from their date ; they contain no agreement to form a partnership. When no time is mentioned for the commencement of a partnership, it begins at the date of the articles.—Collyer on Partnership, § 213 ; Story on Partnership, § 194. Then the partnership in this case, between the complainant and Foster and two others, actually commenced on the 14th April, 1849, (the date of the articles,) and at that time the rights and obligations incident to the relation, both as between the parties and as to its creditors, attached. The proof shows, that the complainant was recognized and treated as a partner, until after the boat was built and brought to Mobile, in February, 1850. Now it is manifest, that here there was an actual and subsisting partnership, acknowledged and recognized for some time, and until a steamboat had been

built for the partnership, and brought to Mobile in pursuance to the terms of the partnership. There is, therefore, no question in the case of a specific performance of a contract to form a partnership.

The true question is, whether a partner who is such by the terms of the partnership, and who has been recognized and treated as such for a time, can be deprived of all participation in the profits of the concern, because the funds which he carried into the partnership, as his equal contribution of the capital stock, had been procured by a gross fraud, perpetrated by him on one of his three copartners, in another and distinct partnership ; or, in other words, will the chancery court rescind or annul the contract of partnership, so far as it secures the rights of a partner to him who committed the fraud. The complainant is, by the contract, a partner. His character as a partner is confirmed by the operations of the company, in pursuance to the articles, until some time in the year 1850. All the liability of a partner as to the creditors of the concern, and others with whom it may have had business, has been upon him. He is a partner, and needs no decree of the court to constitute him a partner. He has a partner's right to participate in the profits, unless the court deprives him of that right by rescinding the contract which constitutes him a partner. The question is, therefore, as to the rescission of the contract upon Foster's cross bill.

Waiving the consideration of the point as to whether it is shown that the complainant, who is certainly liable to the creditors, would be placed in *statu quo*, we place the denial of a rescission upon the ground, that the fraud is in a different transaction, altogether separate and distinct from the contract of partnership. There was a partnership in two steamboats, called the *Inda* and *Belle Creole*, between complainant and Foster, which existed some time before the formation of the partnership between complainant, Foster, Hearne, and Gage. For Foster it is contended, that the complainant made fraudulent entries upon the books of the partnership in the *Inda* and *Belle Creole;* that he designedly omitted to charge himself, where he was

chargeable, and credited himself with improper sums; that the funds carried into the partnership in the *Swan* were the funds of the other partnership, and, upon a correct accounting, were due to Foster; and that, therefore, the complainant has fraudulently invested in the *Swan* partnership money as his own, which good faith required him to pay over to Foster on a settlement of the other partnership. Conceding those facts, contended for on the part of Foster, to be true, the fraud was not one affecting the contract of partnership entered into by these four persons. That it did not enter into that contract at all, is shown by the fact, that it does not affect any of the partners besides Foster. It affects Foster, not in the relation produced by the last partnership, but in his relation of partner with the complainant alone in the *Inda* and *Belle Creole*. It is altogether a separate and distinct matter, and is, therefore, no ground for a rescission, as is settled by the decisions of this court, in Pulliam v. Owen & Russell, 25 Ala. 492, and Byrd v. Odem, 9 Ala. 755.

In this case, there were four partners. It would be unreasonable that Foster should, on account of a separate transaction between him and Ingraham, annul the partnership as to Ingraham, without the consent of the other partners, and thus create a new partnership between three, in which he takes one half the profits, notwithstanding the partnership agreed upon was between four persons, and each was to receive one fourth of the profits. If Foster can annul the partnership as to Ingraham, on account of a fraud in some independent transaction, it is conceivable, that cases might arise, in which one of four partners might annul the partnership as to each of the others, and constitute himself the sole recipient of the profits, while as between the partners in the contract of partnership there was a total absence of fraud.

It is contended for the appellees, that the demurrer to the amended bill should be sustained, because the matter of the amendment is repugnant to the original bill, and makes a new case. The original bill avers, that on the 9th April, 1851, the complainant sold to one Jacob B. Walker his interest in the boat, and, from that time,

Walker was entitled to the interest; but that the complainant was entitled to the earnings and profits up to that time. The amended bill varies those allegations, by saying that the sale to Walker, though absolute in form, was designed to be a mere mortgage, or security, for advances in money made and to be made by Walker for Ingraham; and that, upon accounting, $2,221 62 was ascertained to be the amount due to Walker, who held the absolute title as a security for that amount. There is an inconsistency between the allegations of the original and amended bills; but such inconsistency is not a fatal objection to an amendment, unless it have the effect of making a new case. To make an amendment improper, it is not enough that there be a mere inconsistency, or repugnancy of allegation; there must be an inconsistency or repugnancy of the purposes of the bill, as contradistinguished from a modification of the relief. One of the purposes of a chancery amendment is, to correct an erroneous statement of the facts. The effect of the amendment allowed in this case, was not to make a new case, but to enlarge the measure of relief—to remove a limitation placed upon the complainant's relief by an erroneous allegation, and to extend its area, so as to include an additional matter of relief in the same case, excluded by the incorrect statement of the original bill. The contract, the evidence, and the defense, remain the same under the bill as amended.

It may be, that the making of the incorrect statement in the original bill was the result of design, and not of mistake, and had its origin in a corrupt intent. If such was the case, it was a matter proper for the consideration of the chancellor, in determining whether the amendment should be allowed. The chancellor allowed the amendment. It does not appear from the record upon what evidence he acted in its allowance; and we cannot presume that such a corrupt intent existed, or was shown to the chancellor. The question of amendment in this case is not identical with the question in the State, *ex rel. &c.* v. Mayor of Mobile, 24 Ala. 701; and Larkins v. Biddle,

21 Ala. 252. In those cases, the effect of the amendment would have been to have made a new case.

The cross bill avers, and the evidence proves, the insolvency of Ingraham. The claim of Ingraham against Foster is one pertaining to a court of equity, and so is the claim of Foster against Ingraham. The claim of Foster is, therefore, a proper subject for an equitable set-off.—Carroll v. Malone, 28 Ala. 521; Wray v. Furniss, 27 Ala. 471; T. C. & D. R. R. Co. v. Rhodes, 8 Ala. 206. "A cross bill may be sustained, for the purpose of obtaining an equitable set-off."—Goodwin v. McGehee, 15 Ala. 232.

There must be an account, for the purpose of ascertaining the measure of the complainant's relief under the original bill, and of the defendant's relief under the cross bill. As the question arising upon the details of the account have not been argued before us, we deem it safer to leave it to the chancellor, who will have the counsel before him to make the decree.

The judgment of the court below is reversed, and the cause is remanded for further proceedings in pursuance to the foregoing opinion.

RICE, C. J., *dissenting*, held that the fraud perpetrated by Ingraham on Foster was a bar to the relief sought in this case.