ON APPLICATION FOR REHEARING
After further consideration of this case, the original opinion is withdrawn, and the following is substituted as the opinion of the Court. *Page 731 
Celeste Barrett and Carolyn Allan formed a partnership, Cedar Bark Lot 14 (hereinafter "Cedar Bark"), which purchased a parcel of real estate containing a residential dwelling from Barrett Builders, Inc., a corporation apparently owned or controlled by Celeste Barrett's then-husband, Raymond. In connection with the purchase Mrs. Barrett and Mrs. Allan executed and delivered a promissory note and a mortgage in the amount of $13,001.45, payable to the order of Barrett Builders, Inc. The note was due in one lump sum with interest at the rate of 8 3/4 per annum three years from the date it was executed. The maturity date was May 28, 1979.
Mrs. Allan and her daughter moved into the house and shortly afterwards, Mrs. Allan began noticing numerous defects in the structure. Although she requested Barrett Builders, Inc., to remedy the defects, they were never repaired.
In December 1977, Raymond and Celeste Barrett were divorced. As part of an agreement incorporated into their final decree of divorce, Raymond Barrett agreed to assume liability for, and to hold Celeste Barrett harmless from, claims made against Celeste Barrett arising out of the operation of Barrett Builders, Inc.
On November 20, 1979, (after the note had matured) Raymond Barrett, acting on behalf of Barrett Builders, Inc., assigned the note and mortgage to the appellee, Odom, May DeBuys (hereinafter "Odom"). The assignment was made to assure payment of legal fees incurred by Raymond Barrett and Barrett Builders, Inc.
After the divorce, various parties made claims against Celeste Barrett arising out of transactions involving Raymond Barrett and Barrett Builders, Inc. On December 10, 1979, she made a written demand on him for indemnification under the terms of the indemnification agreement in the divorce decree. She testified that she spent $8,464.00 successfully defending the claims.
Prior to April 25, 1981, Odom published notice of the foreclosure of the mortgage. Celeste Barrett, individually and as a partner in Cedar Bark, filed an action against Odom seeking to enjoin foreclosure of the mortgage. The complaint asked that the court determine the amount which Cedar Bark, the partnership, and Celeste Barrett, individually, were entitled to set off against the indebtedness due under the note to Barrett Builders, Inc., which had been assigned to Odom. She prayed for a judgment satisfying and cancelling the mortgage on the property.
After taking oral testimony the trial court found and/or ordered as follows:
(1) That Odom was the assignee of the note;
(2) That Odom's rights were governed by § 7-3-306 of the Code of Alabama (1975);
(3) That Cedar Bark's claim of $6,880.00 against Barrett Builders, Inc., arising out of the construction of the dwelling, be set-off against the amount due on the note;
(4) That the individual claims of Celeste Barrett against Raymond Barrett could not be set-off against the amount due on the note; and
(5) That the full principal amount of the note should bear interest until the date of maturity; that all principal and interest accrued as of the maturity date should bear interest from the date of maturity until the date of assignment; that $6,880.00 should be subtracted from the total amount due on the date of assignment; and that the remaining sum should bear interest until the note is paid.
On appeal neither party questions the propriety of the judge's order allowing Cedar Bark to reduce its obligation on the note by $6,880.00, the amount of its breach of warranty claim against the assignor. Celeste Barrett argues, however, that she should also be allowed to set-off the $8,464.00 claimed by her against Raymond Barrett under the indemnification agreement in their divorce decree. She also questions the trial court's method of computing the interest due on the note. *Page 732 
The trial court did not specify the reasons that the individual claims of Celeste Barrett could not be set-off against the amount due on the note, but only made a general finding that such claims could not be allowed. When a trial court makes no specific findings of fact, but only a general finding that a claim will not be allowed, "[w]e will assume that the trial court made those findings which will justify the decree rendered." Sims v. Reinert, 285 Ala. 658, 661,235 So.2d 802, 805 (1970).
One reason that can be asserted as justifying the trial court's disallowance of the individual claims is the fact that the note in question was executed to Barrett Builders, Inc., while Mrs. Barrett's claims are against Raymond Barrett individually. However, the parties to this appeal in their original briefs to this Court did not raise the issue of a separate corporate existence, and appellant in her application for rehearing claims that Barrett Builders, Inc., was the alter ego of Raymond Barrett and that the corporation and the individual were treated as one by the trial court.
We generally accept the concept that a corporation is a separate legal entity, but when this concept is invoked in support of an end subversive of justice, it will be disregarded. Cohen v. Williams, 294 Ala. 417, 420,318 So.2d 279, 280 (1975) (quoting 18 Am.Jur.2d Corporations § 14 at 559 (2d ed. 1965)). A separate corporate existence will not be recognized when a corporation is so organized and controlled and its business so conducted as to make it a mere instrumentality of another or the alter ego of the person owning and controlling it. Woods v. Commercial Contractors,Inc., 384 So.2d 1076, 1079 (Ala. 1980). A corporation and the individual or individuals owning all its stock and assets can be treated as identical, even in the absence of fraud, to prevent injustice or inequitable consequences. Cohen,294 Ala. at 421, 318 So.2d at 281.
The trial court, without a jury, heard ore tenus testimony on the separate corporate existence and the other issues in this case. Generally, when a trial court has heard ore tenus testimony, "every presumption will be indulged in favor of the trial court, and its findings will not be disturbed on appeal unless palpably wrong or clearly erroneous." Morrow v. Wood,411 So.2d 120, 122 (Ala. 1982). However, "[w]here the evidence before the trial court is undisputed, the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts." Samfordv. First Alabama Bank of Montgomery, N.A., 431 So.2d 146, 149
(Ala. 1983).
Undisputed testimony was offered at trial which showed that Raymond Barrett, without any authorization or authority other than his own, assigned the note in question to Odum, not only for the supposed debt of Barrett Builders, Inc., to the firm, but also for his own existing debt to the firm for services already rendered to him in the divorce and for services to be rendered to him on a pending petition to modify. The parties stipulated that the expenses incurred by Mrs. Barrett in defense of claims covered by the indemnity agreement were a result of debts owed not only by Raymond Barrett, but by Barrett Builders, Inc. The record also contains undisputed testimony which shows that Raymond Barrett used corporate funds to satisfy personal obligations. In light of this evidence, the trial court erred if it disallowed the individual claims of Celeste Barrett on the basis of the separate corporate existence of Barrett Builders, Inc. The evidence offered to prove that Barrett Builders, Inc., was merely the alter ego of Raymond Barrett is undisputed and clearly compels the treatment of the corporation and the individual as one.
Treating Barrett Builders, Inc., and Raymond Barrett as one, we must entertain the alternative ground for disallowance of the individual claims and decide the issue raised by the parties, which is whether Code 1975, § 7-3-306 (b), permits the maker of a negotiable instrument to assert prior party set-off(i.e., an unrelated claim that *Page 733 
would have been available as a set-off had the original holder sued the maker on the instrument) as a defense against one not a holder in due course.[1] Section 7-3-306, corresponding to § 3-306, Uniform Commercial Code (UCC), provides in part:
 "Unless he has the rights of a holder in due course, any person takes the instrument subject to:
". . .
 "(b) All defenses of any party which would be available in an action on a simple contract. . . ."
Comment 3 to § 7-3-306 states that "Paragraph (b) restates the first sentence of the original Section 58." The first sentence of § 58 of the Uniform Negotiable Instruments Law (NIL) provided: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." Code 1940, tit. 39 § 60, corresponding to § 58, NIL.
The language of UCC § 3-306 (b) and NIL § 58 "appears to allow prior party set-off against a mere holder any time such a set-off would be available against the assignee of a non-negotiable contract right." Note, Prior Party Set-off as aDefense under U.C.C. Section 3-306 (b), 1981 U.Ill.L.Rev. 869, 875-6. However, a comment accompanying § 58 raised questions regarding its proper interpretation. Note, supra at 876. A discussion of the comment provides:
 "The Commissioners' Note stated that local law was still relevant to the availability of prior party set-off, but did not clearly indicate whether prior party set-off was allowed whenever the local statutes made set-off available against assignees of contract rights or only when the local statute explicitly mentioned negotiable instruments."
Note, supra at 876.
Two interpretations of the language of § 58 are available to the courts presented with the question of the meaning to be given to "defenses" in § 3-306. Note, supra at 876. The majority of courts addressing this issue have interpreted the Commissioners' Note to indicate that the NIL drafters did not intend any change in prior state law regarding the rights of parties who did not qualify for holder-in-due-course status and have relied on pre-NIL state law to determine the availability of prior party set-off. Note, supra at 881-8 (that Note refers to this interpretation as the "current judicial interpretation"). The other interpretation focuses on the plain meaning of § 58 and would allow prior party set-off against a mere holder whenever state law allowed prior party set-off against the assignee of non-negotiable paper. Note, supra at 876. Pursuant to either of these interpretations, we would allow the maker of a negotiable instrument to assert prior party set-off as a defense against one not a holder in due course.
The Alabama set-off statute provides: "All contracts and writings, except such as are governed by the Uniform Commercial Code, and paper issued to circulate as money, are subject to all payments, setoffs and discounts had or possessed against the same previous to notice of an assignment or transfer." Code 1975, § 8-5-25. The language of this statute would seem to exempt from set-off any writings or instruments governed by the UCC, but the Court in President, etc., Bank of Mobile v.Poelnitz, 61 Ala. 147 (1878), limited the exception in favor of commercial paper.[2] This exception relieves commercial paper from *Page 734 
liability to set-off only when it has been negotiated in good faith before maturity. President, etc., Bank of Mobile,61 Ala. at 149. This pre-NIL interpretation of the exception provided by the set-off statute is consistent with the language of Code 1975, § 6-8-83, which provides: "Paper governed by the commercial law, negotiated before maturity, is not subject to counterclaim." It is also consistent with present UCC provisions, as will be shown by this opinion.
A careful reading of the Alabama statutes relating to set-off, along with the cases interpreting these provisions, would indicate that pre-NIL Alabama law would allow the maker of a negotiable instrument to assert prior party set-off as a defense against one not a holder in due course who took after maturity. President, etc., Bank of Mobile v. Poelnitz, 61 Ala. 147
(1878); Carroll v. Malone, 28 Ala. 521 (1856); Stone v.Goldberg Lewis, 6 Ala. App. 249, 60 So. 744 (1912). InRobertson v. Breedlove, 7 Port. 541 (Ala. 1838), a different conclusion was reached,[3] but in Carroll v. Malone,28 Ala. at 527, this conclusion was labeled as dictum and questioned by the Court. Even if the conclusion in Robertson was not dictum, it was reversed by the later decisions in Carroll andPresident, etc., Bank of Mobile. In light of these decisions, we can conclude that Alabama courts prior to the adoption of the NIL allowed the maker of a note to assert prior party set-off as a defense against a mere holder who took after maturity. Therefore, pursuant to the first interpretation of the language of § 3-306, and the comments, we would interpret "defenses" in our § 7-3-306 (b) to include prior party set-off.
The second interpretation focuses on the plain meaning of § 3-306 and § 58 and would allow prior party set-off as a defense against a mere holder whenever state law allowed prior party set-off against the assignee of non-negotiable paper. Section8-5-25 provides that all contracts and writings, except those governed by the UCC, are subject to all payments, set-offs, and discounts had or possessed against the same previous to notice of assignment or transfer. The language of this statute is consistent with the wording of § 167 (1) of the Restatement ofContracts (1932), which provides:
 "An assignee's right against the obligor is subject to all limitations of the obligee's right, to all absolute and temporary defenses thereto, and to all set-offs and counterclaims of the obligor which would have been available against the obligee had there been no assignment, provided that such defenses and set-offs are based on facts existing at the time of the assignment, or are based on facts arising thereafter prior to knowledge of the assignment by the obligor."
The provisions of § 8-5-25 clearly allow prior party set-off against the assignee of non-negotiable paper, and, therefore, pursuant to the second interpretation, we would allow prior party set-off as a defense against a mere holder of negotiable paper who took after maturity as long as the claim for the set-off arose prior to notice of assignment or negotiation.
Following the second interpretation, which leads to simplicity and uniformity,[4] we interpret "defenses" in §7-3-306 (b) to include prior party set-off when *Page 735 
the instrument is negotiated after maturity and the claim for the set-off arose prior to notice of assignment or negotiation. The note in question was assigned after maturity, but the record is not clear as to when the individual claims of Celeste Barrett arose. Therefore, we remand this case to the trial court for that court to determine when these claims arose and to allow a set-off against the amount of the note for those claims which arose prior to notice of assignment.
Appellant also questioned the trial court's method of computing the interest due on the note. The trial court ruled that the full amount of the principal should bear interest until the date of maturity, and that all principal and interest accrued as of that date should bear interest from that date till the date of assignment, at which time the amount of the claim for breach of warranty ($6,880.00) should be subtracted. Appellant argued that the principal should have been reduced by $6,880.00 initially and that the interest should be calculated on the difference between the face amount of the note and $6,880.00.
We find no controlling authority in Alabama on the issue. Apparently, courts considering the question have reached differing results. See Macri v. United States, 353 F.2d 804,808 (9th Cir. 1965).
If the trial court's decree is allowed to stand, the purchasers will be forced to pay interest on the entire principal up until the date of maturity, and then to pay interest on the combined principal and interest until the note was assigned, even though $6,880.00 of the $13,001.45 represents payment for work which was unsatisfactory. Since the builder's breach resulted in a diminution of the fair market value at the time of the sale, allowing a recovery for interest based on the full amount of the principal would be tantamount to charging the purchasers interest on money which, due to the breach of warranty, they never in fact owed. Such a result would, in our opinion, result in unjust enrichment. Interest should be computed on the difference between the face amount of the note and $6,880.00, from the date of execution until maturity, and then until payment, interest should be computed on the combined principal and interest accrued as of the maturity date.
REHEARING GRANTED; OPINION SUBSTITUTED; REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON, EMBRY and ADAMS, JJ., concur.
[1] No contention is made that Odom is a holder in due course.
[2] The court was interpreting two sections of the Alabama Code of 1876 which are similar in language to the present code provisions:
 § 2100 "All contracts and writings, except bills of exchange, promissory notes, payable in money at a bank or private banking house, and paper issued to circulate as money, are subject to all payments, sets-off and discounts had or possessed against the same previous to notice of the assignment or transfer."
 § 2995 "The foregoing provisions relating to sets-off, do not apply to bills of exchange nor notes payable in bank [sic], or at a private banking house, which have been in good faith negotiated before maturity."
Ala. Code (1876).
[3] In Robertson, the opinion indicated that a "holder is not subject to a set-off, in respect of a debt due from the endorser to the maker of the note, arising out of a collateral contract." 7 Port. at 543-4.
[4] The author of the note discussing prior party set-off as a defense under UCC § 3-306 (b) lists several significant advantages of the "plain meaning" interpretation over the "current judicial interpretation," which looks to pre-NIL state law:
 "First, this interpretation is more consistent with the language of section 3-306 (b) and accords with several other provisions in the text of the U.C.C. Second, this alternative approach avoids the complex search into pre-U.C.C. state law often required by the current judicial interpretation. Finally, the alternative interpretation results in a more uniform rule regarding the availability of prior party set-off under section 3-306 (b)."
Note, supra at 889.